*In re* MARRIAGE OF DONALD B. CORKEY, Petitioner-Appellant, and DI-
ANE L. CORKEY, Respondent-Appellee.

Second District    No. 2—94—0272

Opinion filed January 30, 1995.

Donald B. Corkey, of Naperville, appellant *pro se*.

Sherry R. Silvern, of Elgin, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

Petitioner, Donald Corkey, appeals the circuit court's orders requiring him to pay $44,466.66 in past-due maintenance and child support and denying his petition to modify a marital settlement agreement. Petitioner contends that the settlement agreement expressly contemplated that his income would increase substantially and that his subsequent reduction in income renders the agreement unconscionable.

The parties were married in New Jersey in 1968. They had three children: Scot, born January 31, 1972; Jon, born June 23, 1975; and David, born September 8, 1976. The circuit court dissolved their marriage in 1984. The judgment of dissolution incorporated the parties' settlement agreement, which contained the following provisions, among others. The wife would have custody of the children, subject to reasonable visitation by the husband. The wife would have exclusive possession of the marital residence and would be solely responsible for all obligations in connection with the residence, including the mortgage payment. The husband would retain the outstanding shares of his business, D.B. Corkey Company, Inc., all accounts in his name or the name of his business, and various items of personal property. The husband would pay the wife $31,200 annually, in monthly installments of $2,600, as unallocated maintenance and child support.

The agreement further provided:

"The parties consider this to be a lump sum unallocated maintenance and support award and that the same shall be non-modifiable no matter what the change[s] in circumstances are by either party. It is specifically understood by the Wife that the sums to be paid to her by the Husband are far greater than usual, based upon the income of the Husband. The parties contemplate that the Husband's income shall increase substantially, but that any increase in income and/or assets on the part of the Husband shall not be a cause for the modification of the amounts as stated aforesaid. To that purpose, the parties agree that the amounts and times of termination of said amounts are non-modifiable."

The agreement then lists five specific circumstances in which the maintenance and child support provision may be modified. These include the wife's remarriage or cohabitation with another person on a continuing, conjugal basis; one of the children reaching majority; and the transfer of custody of any of the children to the husband.

The agreement also states that the husband shall be solely responsible for the children's primary and advanced education and will keep in force insurance policies covering extraordinary dental and medical expenses, four life insurance policies payable to the wife, the husband's disability insurance, and $5,000 life insurance policies on each of the three children.

On March 4, 1993, the wife filed a petition for a rule to show cause, alleging, *inter alia*, that the husband had not paid the unallocated maintenance and child support since January 1, 1990. The husband filed a response to the show cause petition and a petition to modify the dissolution judgment. The latter pleading alleged a material change in circumstances and sought a reduction in maintenance and child support to a level appropriate to the husband's earnings.

On August 25, 1993, the trial court held a combined hearing on the two petitions. The husband testified that at the time of the dissolution he was a real estate broker. He owned his own company, which specialized in commercial real estate ventures. In 1984, his company was in the process of negotiating a contract with a major corporation to buy $55 million worth of property in the Chicago area. The husband was to have a planning contract for those properties worth about $250,000 per year to the corporation. However, in 1985 the seller of the property refused to close the sale. Litigation ensued. The husband expended $45,000 in legal fees, but ultimately he and the buyer lost. The husband never realized any income from the transaction.

The husband also testified that, in 1986, the commercial real estate market collapsed and his business declined precipitously. He

stated that by 1988 he had no income. He borrowed money from his current wife, his sister, and his credit card lines of credit to keep up the maintenance and child support payments.

The husband's exhibit No. 1, which was introduced into evidence without objection, shows that the husband's income in 1984 was $74,000. He had income in 1985 of $28,500; in 1986 of $20,900; and in 1987 of $24,000. From 1988 through 1993, his income was $0. The exhibit also shows that the husband continued to pay the full amount of unallocated maintenance and child support from 1984 through 1989. Beginning in 1990, the annual payments began to decline, with $2,775 paid in 1993 through the date of the hearing. Further, the husband paid an additional $60,250 for insurance premiums, attorney fees, repairs to the marital home, "direct support to Children," and clothing for the children.

The trial court refused to find the husband in contempt of court because there was no evidence that he wilfully violated the court's order. However, the court entered judgment against the husband for past-due maintenance and child support of $44,466.66. The court also denied the husband's petition to modify because the agreement provided that it was not modifiable.

The husband filed a petition to reconsider the latter holding. After hearing argument from the husband *pro se* and the wife's attorney, the court denied the motion, stating:

> "And I am not going to grant [the husband's] motion to reconsider. He has a right to appeal this decision and maybe that is what he should do, but I think the decision I made was the correct one under the law, even though I agree with alot [*sic*] of what he is saying.

> * * *

> I took [the petition to modify] under advisement because alot [*sic*] of things that Mr. Corkey was saying, appear to be accurate, and it didn't seem quite right, but that is the law as I understand it."

The husband then perfected this appeal.

We must first dispose of several preliminary matters. The parties filed three motions which we ordered taken with the case. First, the wife filed a motion to dismiss the husband's appeal or, in the alternative, to strike his brief. The motion lists several grounds for relief.

■ The wife contends that the appeal must be dismissed because the husband failed to give her notice of the appeal within seven days of filing as required by Supreme Court Rule 303(c) (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303(c), eff. February 1, 1994). However, Supreme Court Rule 301 provides that the *filing* of

the notice of appeal is the only jurisdictional step. (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 301, eff. February 1, 1994.) Here, the wife obviously had actual notice of the appeal and does not claim that she was prejudiced by the failure to receive notice in the manner required by the rule. While a violation of the supreme court rules is not to be taken lightly, we find that any violation here does not deprive this court of jurisdiction.

The wife further contends, however, that we have no jurisdiction to review the order entered pursuant to the wife's rule to show cause petition. On August 25, 1993, the court ruled that the husband was not in contempt of court, but ordered him to pay $44,466.66 in past-due maintenance and child support. On March 4, 1994, the husband filed a notice of appeal purporting to appeal from this order as well as the February 7, 1994, order denying his petition to modify. In his brief, the husband does not develop any argument directly related to this order.

We agree that we lack jurisdiction to review the August 25, 1993, order. That order was final and appealable, and the husband did not file a motion to reconsider that order or a notice of appeal within 30 days of August 25. (See Official Reports Advance Sheet No. 26 (December 22, 1993), R. 303, eff. February 1, 1994.) Therefore, we lack jurisdiction to determine any issue relative to the August 25 order.

The wife further contends that the husband's brief should be stricken for the failure to comply with various sections of Supreme Court Rule 341. (Official Reports Advance Sheet No. 26 (December 22, 1993), R. 341, eff. February 1, 1994.) While we agree that the brief fails to comply strictly with the rule, we do not find it so deficient as to hinder our review of the issues on appeal. Therefore, we deny the motion to strike the husband's brief, but we will disregard any inappropriate material contained therein.

The wife has also filed a motion to strike the husband's reply brief for its failure to comply with Rule 341. The husband filed a motion to strike the wife's motion to strike. For the reasons stated above, we deny the wife's motion to strike the reply brief. We deny the husband's motion as moot.

The wife's motion also raises various waiver arguments. We decline to dismiss the appeal or strike the husband's brief on the basis of alleged waiver of issues. We will discuss the waiver question further in conjunction with the substantive issues raised.

We turn now to the issues raised on appeal. The husband states that the issues are that the original settlement agreement was unconscionable, that the court below failed to correct the original settle-

ment agreement, and that the court erred in failing to follow the statutory guidelines for child support.

■ We have no jurisdiction to determine the propriety of the original settlement agreement. The agreement was entered into in 1984. The husband filed his petition to modify in 1993. It is clear that the petition sought merely prospective modification of the judgment; it did not seek to vacate the judgment as of the date it was entered. Moreover, the circuit court lacked jurisdiction to vacate the 1984 judgment. Even if the petition to modify could be construed as a section 2—1401 petition directed against the 1984 judgment, it clearly was not filed within two years of the entry of the judgment. (735 ILCS 5/2—1401 (West 1992).) It has been held that past-due child support installments become vested rights, and a court may not modify such amounts retroactively. (*In re Marriage of Johnson* (1982), 106 Ill. App. 3d 502, 512.) Thus, we limit our consideration of the issues to determining whether the trial court abused its discretion in failing to modify the judgment prospectively.

The parties to a dissolution settlement agreement may agree to make the maintenance provisions nonmodifiable. (*In re Marriage of Scott* (1990), 205 Ill. App. 3d 561, 564.) The intention to preclude modification must be expressly stated. (*Scott*, 205 Ill. App. 3d at 565.) However, provisions pertaining to child support may not be made nonmodifiable. (750 ILCS 5/502(f) (West 1992); *In re Marriage of Loffredi* (1992), 232 Ill. App. 3d 709, 711-12.) Marital settlement agreements are essentially contracts between the parties, and the rules pertaining to construction of contracts apply to the interpretation of the provisions of such agreements. *In re Marriage of Belk* (1992), 239 Ill. App. 3d 806, 809.

As noted, the husband frames the issues in terms of unconscionability, which may be a defense to a contract action. Generally, however, the defense of unconscionability looks to the circumstances surrounding the making of the agreement. (See *In re Marriage of Smith* (1987), 164 Ill. App. 3d 1011, 1017.) We have already determined that the husband may not raise any issue relative to the making of the agreement in 1984. We believe that, while inartfully drafted, the husband's brief fairly raises the issues of the failure of a condition precedent and legal impossibility. Moreover, the husband's argument before the trial court, although not using these exact words, also fairly raised the issue in that forum.

The husband points to the following language of the agreement:

> "It is specifically understood by the Wife that the sums to be paid to her by the Husband are far greater than usual, based upon the income of the Husband. The parties contemplate that the

Husband's income shall increase substantially, but that any increase in income and/or assets on the part of the Husband shall not be a cause for the modification of the amounts as stated aforesaid."

The husband argues that the anticipated event did not occur and that, instead, his income decreased substantially.

■ A condition precedent is defined as an event which must occur or an act which must be performed by one party to an existing contract before the other party is obligated to perform. (*Maywood Proviso State Bank v. York State Bank & Trust Co.* (1993), 252 Ill. App. 3d 164, 168; 18 W. Jaeger, Williston on Contracts § 1954, at 126-27 (3d ed. 1978).) The obligations of the parties end in the event that a condition precedent is not satisfied. (*Maywood Proviso*, 252 Ill. App. 3d at 168.) It is at least arguable that the parties intended this provision to be a condition precedent: if the husband's income failed to increase substantially, the condition failed and further performance was excused.

Alternatively, the law of contracts provides the defense of impossibility. As Professor Jaeger explains, "The tendency of the law is clearly and definitely toward an enlargement of the defense of impossibility, and in any case where it may fairly be said that both parties assumed that the performance of the contract would involve the continued existence of a certain state of affairs, impossibility of performance because of a change in this condition of affairs will ultimately be held an excuse." (18 W. Jaeger, Williston on Contracts § 1952, at 109-12 (3d ed. 1978).) Illinois courts have recognized this principle. (See *People ex rel. Palmer v. Peoria Life Insurance Co.* (1941), 376 Ill. 517, 521-22 (agency contract presumed continued existence of defendant company); *Davies v. Arthur Murray, Inc.* (1970), 124 Ill. App. 2d 141, 155 (evidence that plaintiff was physically incapable of continuing dancing lessons would have been cause for rescission of contract, but plaintiff failed to prove physical incapacity).) Whether the nonoccurrence of an event was a basic contract assumption is a question of foreseeability. (*Northern Illinois Gas Co. v. Energy Cooperative, Inc.* (1984), 122 Ill. App. 3d 940, 954.) Thus, where the parties foresaw the nonoccurrence of the event and the contract allocates the risk accordingly, the defense of impossibility does not apply. See *Northern Illinois Gas*, 122 Ill. App. 3d at 955 (adverse shifts in gas prices were foreseeable and Northern agreed to assume that risk).

Finally, we note that section 502(f) of the Illinois Marriage and Dissolution of Marriage Act (the Act) specifically provides that child

support agreements may not be made nonmodifiable. (750 ILCS 5/502(f) (West 1992).) The agreement calls for $31,000 per year in unallocated maintenance and child support payments. Thus, the Act expressly permits the court to modify such payments regardless of the parties' agreement, at least to the extent that such payments represent child support. We note that the agreement, while referring to the payments as unallocated maintenance and child support payments, does appear to allocate the payments in part. The agreement provides for the abatement of the annual payments by a given amount as each child becomes emancipated. Thus, the agreement gives at least some indication of the parties' intention regarding the allocation of the payments. Further, we note the parties' agreement that one of the three children had become emancipated.

Where the terms of a marital settlement agreement are ambiguous, the court should consider extrinsic evidence of the parties' intention to resolve the ambiguity. (*In re Marriage of Belk* (1992), 239 Ill. App. 3d 806, 809; *In re Marriage of Marquardt* (1982), 110 Ill. App. 3d 271, 276-78.) In this case, the provisions of the agreement regarding the contemplated increase in the husband's income are ambiguous. The contract expressly recognizes that the payments are "much larger than usual" based on the husband's income. Further, the parties express their contemplation that the husband's income will increase substantially. The agreement provides that the wife may not rely on the husband's income to petition for an increase in maintenance and child support. On the other hand, the agreement does not say what happens if the husband's income decreases or is eliminated altogether. It is thus unclear whether the reference to the husband's increased income was intended to be in the nature of a condition precedent to the maintenance and support obligations, or was intended as an express allocation to the husband of the risk of such an eventuality.

■ The court below did not consider this issue. The court's comments, particularly in denying the husband's motion to reconsider, indicate the court's belief that it lacked the authority to modify the agreement under any circumstances. Since we have determined that circumstances may exist under which the agreement may be modified, it becomes necessary to resolve the ambiguity and determine the parties' true intentions. We believe this should be done by the trial court in the first instance.

For the foregoing reasons, the circuit court's judgment denying

400

the petition to modify the settlement agreement is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

McLAREN, P.J., and BOWMAN, J., concur.