No. 3--96--0054

_________________________________________________________________

                                  IN THE 

                        APPELLATE COURT OF ILLINOIS

                              THIRD DISTRICT

                                A.D., 1996

IN RE THE MARRIAGE OF:         )  Appeal from the Circuit Court of

                               )  the 12th Judicial Circuit,

YOLANDA R. STEADMAN           )  Will County, Illinois

                               )

     Petitioner-Appellant,     )

                               )

     and                       )  No. 94--D--11554

                               )

JEFFREY H. STEADMAN           )  Honorable

                               )  Ludwig J. Kuhar,

     Respondent-Appellee.      )  Judge Presiding.

_________________________________________________________________

JUSTICE MICHELA delivered the opinion of the court:

_________________________________________________________________

     Petitioner, Yolanda Steadman (wife), appeals the denial of her

motion to vacate a judgment authorizing the dissolution of her

marriage to respondent, Jeffrey Steadman (husband).  She sought to

prevent the incorporation of an oral settlement agreement resolving

disputed issues arising from the dissolution of her marriage into

the final judgment entered by the circuit court of Will County on

October 5, 1995.  For the reasons set forth below, we hold that the

trial court committed no abuse of its discretion when it approved

the terms of the negotiated oral settlement agreement.

     In August of 1994, the parties separated.  Wife left the

marital residence located in Bolingbrook and took the couple's

three youngest sons with her to a summer home while husband

remained in Bolingbrook with the two eldest sons.  Husband remained

employed as a hospital administrator, earning a salary of $150,000

and wife, who had not worked since their marriage in 1975,

petitioned the court for maintenance and support.  On November 2,

1994, the trial court ordered that husband pay $2,400 a month in

unallocated family support.  The trial court further ordered that

husband retain temporary physical custody of the two eldest

children while wife would retain temporary physical custody of the

three youngest children.

     Wife decided to relocate to Wixom, Michigan with the three

youngest children and the record is unclear as to whether husband

consented to this move.  Nonetheless, wife and the three youngest

children moved to Wixom, Michigan and on August 28, 1995, husband

filed an emergency petition seeking to enjoin the permanent removal

of the three youngest children to Michigan.  A hearing on husband's

petition was scheduled for September 1, 1995.

     On September 1, 1995, wife, husband and respective counsel met

in court and commenced two hours of negotiations in the hallway

which formed the basis of the oral settlement agreement currently

at issue.  Instead of arguing the merits of husband's emergency

petition to enjoin the removal of his children to Michigan, the

parties and their counsel presented the terms of their oral

settlement agreement to the trial court.  During the course of this

settlement hearing, both wife and husband agreed that the following

terms comprised their agreement.

     First, husband agreed to the removal of his three youngest

children to Michigan subject to certain visitation terms.  Second,

husband agreed to pay $2,775 in unallocated support to wife for

three years.  The monthly support was deemed non-modifiable and

non-reviewable and was taxable income to wife and a deductible

expense to husband; however, wife would be able to claim the

children as exemptions for federal and state income tax purposes. 

At the end of the three years, wife would cease to receive

maintenance and, at that time, child support would be calculated

using the guidelines enumerated in section 505(a)(1) of the

Illinois Marriage and Dissolution of Marriage Act (the Act).  750

ILCS 5/505(a)(1) (West 1994).

     The terms of the property division provision left wife with a

Florida condominium, a parcel of land in Colorado, a 1989 Yamaha

motorscooter and a 1989 GMC van.  Husband's share of the property

was the marital home, vacation property in Kankakee County and a

1989 radian motorcycle.  Additionally, wife and husband agreed that

each would receive the bank accounts, securities and individual

retirement accounts in his or her possession.  Further, husband had

a tax deferred annuity account through his employer which, at the

time of the judgment of dissolution, had a present day cash value

of $116,000.  Husband and wife agreed that after paying attorney

fees, repaying a loan obtained from borrowing against an insurance

policy and paying interest penalties and taxes, the remainder would

be divided equally between them.

     At the hearing wife testified that her goal was to become

self-sufficient and, to this end, she was currently enrolled in a

three year program to become a real estate broker in Wixom,

Michigan.  At the settlement hearing, wife engaged in the following

testimony with her attorney and with the trial court:

          MR. KOZLOWSKI [Counsel for wife]:  And that's

the agreement we worked out today in the hall, and we will reduce

it to writing with the joint custody [agreement], and you're

satisfied with that?

          THE WITNESS [Wife]:  I have no choice.

          THE COURT:  Well, ma'am, I want you to

understand that you do have a choice.  We can sit down right now

and have a formal hearing and the parties can present evidence on

both sides and call any witnesses that you want and the Court will

make a decision.

          THE WITNESS:  Okay.

          THE COURT:  The question I have is, is this

your agreement?

          THE WITNESS:  At this time, yes, sir."

     The judgment was scheduled to be entered on October 5, 1995. 

On that date, wife's attorney, Mr. Kozlowski, withdrew his

representation at her request.  Wife's new counsel, Mr. Holden, was

present and petitioned the trial court for a continuance.  The

trial court denied the motion to continue and entered the judgment

of dissolution over Mr. Holden's continuing objection.  On November

5, 1995, wife filed a motion to vacate the judgment of the

dissolution of her marriage.  Following a hearing on the petition,

the trial court denied the motion to vacate the judgment of

dissolution and wife now appeals.

     We first address the husband's argument that wife's appeal

should be dismissed pursuant to the release of errors doctrine

which states that generally "a litigant cannot attack a decree

whose benefits he has enjoyed, especially if to do so would place

the opposing party at a distinct disadvantage upon the reversal of

the decision."  Lemon v. Lemon, 14 Ill. 2d 15, 17, 150 N.E.2d 608,

610 (1958).  Specifically, husband argues that wife should not be

allowed to attack the judgment of dissolution of marriage on appeal

when she has already enjoyed the benefits of the judgment by being

allowed to remove their three youngest children from Illinois. 

Husband states that he is placed at a distinct disadvantage because

he gave up his right to challenge the removal of his children when

both parties assented to the oral settlement agreement.  Thus,

while wife may have a re-hearing on the financial issues she

challenges on appeal, husband has been disadvantaged because the

court cannot recreate the status quo that existed with respect to

the children because the children have been living in Michigan

since September 1, 1995, under court approval.

     Wife directs our attention to an exception to the release of

errors doctrine which states that where the benefit being enjoyed

is separate from the judgment being appealed, no waiver of

appellate rights has occurred.  Spanel v. Berkman, 171 F.2d 513

(1949).  We agree that this exception is applicable to the instant

case because the removal of the children is not being challenged on

appeal.  Further, the removal of the children is independent from

the economic provisions wife challenges on appeal.  Accordingly, we

decline to apply the release of errors doctrine and will consider

the merits of wife's argument on appeal that the trial court abused

its discretion in denying her petition to vacate the judgment

authorizing the dissolution of her marriage.  Harris v. Harris, 45

Ill. App. 3d 820, 360 N.E.2d 113 (1977).

     On appeal, wife first argues that the trial court erred in

approving an award of nonmodifiable child support.  While parties

to a dissolution of marriage settlement agreement may agree to make

maintenance provisions nonmodifiable, provisions pertaining to

child support may not be made nonmodifiable.  In re Marriage of

Corkey, 269 Ill. App. 3d 392, 397, 645 N.E.2d 1384, 1388 (1995). 

This general rule applies to agreements involving unallocated

support.  See In re Marriage of Gleason, 266 Ill. App. 3d 467, 639

N.E.2d 982 (1994).  However, we find that this issue is rhetorical

when it is plain that no award of child support is nonmodifiable. 

See 750 ILCS 5/502(f) (West 1994); 750 ILCS 5/510 et seq. (West

1994).  Thus, "the unallocated combination of child support into a

taxable maintenance amount, as exists here, necessarily carries

with it the statutory right to modification of child support." 

Gleason, 266 Ill. App. 3d at 468, 639 N.E.2d at 983.  In the

instant action, neither party's statutory right to petition for a

modification of child support due to a substantial change of

circumstances is impaired.  Moreover, we find that the three year

limitation agreed to by husband and wife for the term of

nonmodification was bargained for by wife, particularly when this

three year term coincides with her completion of her education and

training as a real estate broker and her goal of becoming self

sufficient.    

     Wife next argues that the trial court's award of unallocated

support is reversible error because the award does not comport with

the statutory guidelines enumerated in the Act.  750 ILCS

5/505(a)(1) (West 1994).  When parties to a dissolution of marriage

settlement agreement, as in the instant action, agree to divide the

custody of their children, there are no specific guidelines to

follow.  In re Marriage of White, 204 Ill. App. 3d 579, 582, 561

N.E.2d 1387, 1389 (1990).  Wife directs our attention to several

cases which deal with a split custody situation and the methodology

employed by courts to determine a reasonable child support award. 

In re Marriage of Duerr, 250 Ill. App. 3d 232, 621 N.E.2d 120

(1993); In re Marriage of Flemming, 143 Ill. App. 3d 592, 493

N.E.2d 666 (1986); In re Marriage of Pahlke, 154 Ill. App. 3d 256,

507 N.E.2d 71 (1987); In re Marriage of Keown, 225 Ill. App. 3d

808, 587 N.E.2d 644 (1992).

     These cases are distinguishable from the case at bar because

they involve situations where both spouses are employed or possess

the skills and education necessary to obtain employment and where

the court is fashioning an appropriate award of child support

rather than approving an award of unallocated family support agreed

to by the spouses as a term of their dissolution of marriage

settlement agreement.  Thus, the trial court was not obligated to

rely on the statutory guidelines enumerated in the Act.

       In split custody cases a trial court may disregard the

statutory guidelines in the Act and may instead consider the

factors listed in section 505 of the Act.  750 ILCS 5/505(a)(2) et

seq. (West 1994).  In this respect, the trial court stated during

wife's petition to vacate the judgment of the dissolution of

marriage that in considering the monthly award of unallocated

support, it recognized that husband was caring for one minor son

while the other son, who had reached the age of majority, was

residing at husband's home while he attended college.  We disagree

with wife's contention that the trial court was required to engage

in a separate and lengthy evidentiary inquiry when both husband and

wife, through sworn testimony, presented this term to the trial

court as a part of their settlement agreement.

     Next, wife argues that the trial court erred by not stating

its reasons for deviating from the Act's statutory guidelines.  750

ILCS 5/505(a)(1) (West 1994).  In support, wife relies on section

505 of the Act which states:

          "If the court deviates from the guidelines,

          based on consideration of the factors in

          paragraphs 2(a) through 2(e) of subsection (a)

          of this Section, or any other relevant factor,

          it shall make express findings as to its

          reasons for doing so."  750 ILCS 5/505(a)(2)

          (West 1994).

We find that the mandate of the above section is inapplicable in

the instant case because the above section contemplates a situation

where the guidelines are applicable.  The Act's statutory

guidelines are applicable where the trial court is asked to fashion

an award of child support when child custody is the responsibility

of a single parent.  Therefore, the trial court was not required to

conform to section 505 of the Act and state its reasons for

deviating from the guidelines when it was not obligated to apply

the guidelines to a split custody situation.

     Wife next argues that the trial court abused its discretion

because it approved an unconscionable dissolution of marriage

settlement agreement.  Unconscionability is, among other things, a

statutory ground enabling the trial court to set an agreement aside

despite the fact that the law favors amicable settlements of

disputes between parties seeking to dissolve their marriage.  750

ILCS 5/502(a) (West 1994); 750 ILCS 5/502(b) (West 1994); In re

Marriage of Moran, 136 Ill. App. 3d 331, 483 N.E.2d 580 (1985); In

re Marriage of Smith, 164 Ill. App. 3d 1011, 518 N.E.2d 450 (1987). 

Unconscionability exists where there is "'an absence of a

meaningful choice on the part of one of the parties together with

contract terms which are unreasonably favorable to the other

party.'"  In re Marriage of Carlson, 101 Ill. App. 3d 924, 930, 428

N.E.2d 1005, 1010 (1981), quoting Williams v. Walker-Thomas

Furniture Co., 350 F.2d 445, 449 (1965).  Thus, a trial court

examines the conditions under which the agreement was made and the

economic circumstances of the parties resulting from the agreement. 

In re Marriage of Hamm-Smith, 261 Ill. App. 3d 209, 219, 633 N.E.2d

225, 232 (1994).  Wife asserts that the conditions under which the

settlement agreement was made include hasty negotiations and duress

caused by her fear that she may lose custody of her children.  She

further asserts that the financial terms of the agreement

unreasonably favor husband.

     Wife claims that hasty negotiations deprived her of the

opportunity to make a meaningful choice.  We disagree.  It is true

that the oral settlement agreement was contrived during two hours

of negotiations.  However, we decline to mechanically apply an

analysis based on the number of hours spent negotiating as a per se

formulation of unconscionability.  Rather, the significance lies

not in the fact that the parties negotiated for two hours; but,

that they negotiated for two hours at arms length with the aid of

counsel.

     Additionally, wife argues that the record is replete with

examples demonstrating her uneasiness and lack of true assent to

the terms of the settlement agreement.  We find that the record

demonstrates wife may have been unhappy with the settlement terms;

but, this unhappiness does not negate the fact that she stated

under oath to counsel and the trial court that this was her

agreement.  Moreover, when the trial court through close

questioning presented wife with the opportunity to forego the

provisions of the settlement and have a hearing, she declined and

stated the terms she testified to comprised her agreement.

     Wife claims that she suffered from duress because of the

extreme pressure she endured because she was afraid she would lose

custody of her children when she removed them from the state of

Illinois.  Wife bears the burden of showing duress by presenting

clear and convincing evidence that she was bereft of the quality of

mind necessary to make a contract.  Hamm-Smith, 261 Ill. App. 3d at

215, 633 N.E.2d at 230.  While wife's fear that she may lose

custody of her children no doubt caused her anxiety, we do not

recognize this as a factor impairing her ability to exercise her

free will and make a meaningful choice when the record reflects

that she agreed to negotiations, took part in the negotiations and

then presented the substance of these negotiations, under oath, to

the trial court.  Many spouses may experience anxiety when

appearing in court because of a petition to dissolve a marriage and

this anxiety is no doubt heightened when one fears she may lose

custody of her children; however, this factor, without more, does

not clearly and convincingly demonstrate that one lacked the

ability to make a voluntary decision.

     Wife asserts that misleading statements were made by husband

and his counsel when they allowed wife's new attorney, Mr. Holden,

to labor under the misapprehension caused by a typographical error

that the settlement hearing had occurred on September 11, 1995, not

September 1, 1995.  Wife argues the significance of this error is

that it would naturally have appeared to Mr. Holden that there were

10 days in between the negotiations and the settlement hearing and

this tended to show that the settlement agreement was the result of

a lengthy and reasoned consideration.  We agree that Mr. Holden

should have been apprised of this error particularly when the

record lends credence to the fact that husband and his counsel were

aware of the error and its significance.  However, this error is

immaterial when the trial court was not laboring under the same

misapprehension and therefore, the error cannot be said to have

affected the trial court's approval of the settlement agreement.

     Wife next argues that the economic terms of the settlement

agreement unreasonably favor the husband and this fact demonstrates

she agreed to a settlement which was unconscionable.  The record

demonstrates that at the settlement hearing no testimony was

adduced valuing the marital assets except for the marital home. 

The marital home was valued at $135,000 which wife testified was a

low but nevertheless close estimate of its value.  Additionally,

income and expense affidavits were filed by both husband and wife

on November 3, 1994, and these affidavits form the basis of wife's

conclusion that the economic terms of the agreement unreasonably

favor husband. 

     Wife uses the 1994 affidavits to calculate that she received

either 16.7% or 23.7% of the marital estate and that this figure

renders the settlement agreement economically unconscionable. 

Wife's argument relies particularly on the retirement assets

retained by husband which include the tax deferred annuity and a

second unnamed employee retirement benefit which is valued at

$39,000 on husband's 1994 affidavit of income and expenses.  At the

settlement hearing wife testified regarding the retirement assets:

          "MR KOZLOWSKI: [Counsel for wife] Now, in

addition to all the property, there exists a retirement savings

plan which Mr. Steadman has through his employment, is that

correct?

          THE WITNESS [Wife]: I guess so, yes.

          MR. KOZLOWSKI: And many bills have been paid

out of that account, and you and your husband have previously

agreed that he would pay off a bunch of charges through that

[retirement savings plan] [by] borrow[ing] the money from that

[retirement savings plan], is that correct?

          THE WITNESS: Yes, sir.

          MR. KOZLOWSKI: Well, it was borrowed through

an insurance policy and it's going to be reimbursed through that

[retirement savings] plan, is that correct?

          THE WITNESS: That's correct.

          MR. KOZLOWSKI: In addition, there is a

retirement plan and your husband is going to split the assets of

that retirement plan, is that correct?

          THE WITNESS: Yes."

     Wife contends that this unchallenged testimony establishes

that in addition to the "retirement savings plan" or tax deferred

annuity account, a second retirement benefit existed which the

parties intended be split equally between themselves.  However,

this second retirement benefit was not incorporated in the October

5, 1995, written judgment of dissolution of marriage and wife

argues that because of this omission, husband now receives this

marital asset by default, which further contributes to the economic

unconscionability of the settlement agreement.

      We first address husband's argument that this issue has been

waived because no specific objection was raised below.  We

disagree.  Although no specific objection to the financial terms

was made below, we will consider the issue because in a non-jury

proceeding a litigant may forego filing a post-trial motion and may

assert as error grounds raised for the first time on appeal.  In re

Marriage of Wright, 212 Ill. App. 3d 392, 397-98, 571 N.E.2d 197,

200-01 (1991); 134 Ill. 2d R. 366(b)(iii)(ii).

     The October 5, 1995, judgment of dissolution of marriage

stated that the division of the tax deferred annuity account would

be effectuated through a subsequent qualified domestic relations

order.  Counsel for husband, Mr. Howard LeVine, sent notice to

wife's counsel, Mr. Holden, that such a qualified domestic

relations order was scheduled to be presented instanter in court on

October 19, 1995.  Thus, wife had ample opportunity to discover the

error and petition the trial court to include this omitted term in

the qualified domestic relations order.  Accordingly, we find the

record does not support the conclusion that this omission renders

the agreement economically unconscionable.        

     Additionally, wife argues that the value of the tax deferred

annuity account is undermined because the amount of the life

insurance loan which husband was to pay back from the funds of the

tax deferred annuity account had jumped from the $43,000 to which

he testified at the September 1, 1995, settlement hearing to

$63,645.91 which was the figure incorporated in the final judgment

of dissolution of marriage entered on October 1, 1995. However,

this fact does not render the settlement agreement economically

unconscionable when the October 5, 1995, judgment for dissolution

of marriage expressly states that marital debts were to be paid

from the tax deferred annuity account, unambiguously expressing the

intent of the parties.  The record supports the reasonable

inference that marital debt had been paid between September 1, 1995

and October 1, 1995, from the proceeds of the tax deferred annuity

account.  Moreover, as noted above, wife had ample opportunity to

challenge any discrepancies in the valuation of the retirement

benefits at the October 19, 1995, court date and object to the

presentation and entry of the qualified domestic relations order. 

Thus, we do not find that the fact that the parties agreed to

equally divide the tax deferred annuity account, after paying

marital debt which necessarily lessened the amount to be shared,

constitutes economic unconscionability.

     We have examined the record and are unconvinced that the

economic positions of the parties following the dissolution of

their marriage are so inequitable that the settlement agreement

must be set aside as unconscionable.  Rather, it appears from the

record that there was much quid pro quo in reaching the settlement

agreement, that there were sentimental attachments to certain

parcels of realty which wife bargained for and was subsequently

awarded, coupled with both parties' desire to amicably end the

marriage.  The mere appearance that an agreement favors one party

over another does not render the agreement unconscionable.  Hamm-

Smith, 261 Ill. App. 3d at 220, 633 N.E.2d at 233.  Thus, we hold

the settlement agreement was not economically unconscionable and

find that the circuit court of Will County did not abuse its

discretion in denying wife's petition to vacate the judgment of

dissolution of marriage.

     Affirmed.                 

     BRESLIN, P.J. and McCUSKEY, J., concur.