THIRD DIVISION

NOVEMBER 5, 1997

1-95-3730

In Re MARRIAGE OF ) APPEAL FROM THE

) THE CIRCUIT COURT OF

STEPHEN B. SINGLETEARY, ) COOK COUNTY, ILLINOIS

) 

Petitioner-Appellee, )

) NO. 91 D 04278

and ) 

)

CHESTER L. SINGLETEARY, ) THE HONORABLE

) KAREN SHIELDS,

Respondent-Appellant. ) JUDGE PRESIDING.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

On April 7, 1992, the trial court entered a judgment for dissolution of marriage between the petitioner, Stephen Singleteary, and respondent, Chester Singleteary.  The judgment incorporated a marital settlement agreement that included provisions for child support for their child, Stephen II (Stephen II).  The agreement provided that respondent have physical custody of Stephen and petitioner agreed to pay $864 per month or 20% of his net income, whichever amount was greater.  In February 1995, petitioner filed an amended petition for modification of child support due to a substantial change in circumstances.  The amended petition stated that there had been a substantial increase in petitioner's income and the application of the percentage order of the judgment would result in a child support payment that exceeded the needs of the child and would create a windfall to respondent.  His prayer for relief asked the trial court to modify the child support order and to enter a child 

support order in a stated sum in a reasonable amount for the support of Stephen II.  The trial court found that the 20% support order would result in an amount in excess of the needs of Stephen II and ordered petitioner to pay $2,000 in child support per month.  On appeal, respondent contends that: (1) the trial court erred in modifying child support, since the parties had agreed to a valid and enforceable settlement agreement; (2) petitioner failed to show a requisite change of circumstances to warrant a modification of the settlement agreement; and (3) she demonstrated sufficient support needs to warrant a $3,000-per- month award.

BACKGROUND

Petitioner and respondent were married on July 22, 1982. Their only child, Stephen B. Singleteary II, was born on February 22, 1985, and was six years old at the time petitioner filed a petition for dissolution of marriage. At the time of their divorce, respondent was employed as a banker by the First National Bank of Chicago, earning an annual gross salary of $55,000. Petitioner was a self-employed businessman with an annual income of $90,000.

A judgment for dissolution of marriage was entered on April 7, 1992, which required petitioner to pay to respondent for the support of seven-year-old Stephen II the sum of $432 twice a month or 20% of his net income, whichever amount was greater. Child support payments were to be determined by the following

2 

formula: total income (line 23 of the 1991 United States tax form No. 1040) minus line 18 (rents, partnership, estates,trusts, etc.) of schedule E, minus federal and state income taxes, social security (FICA) payments and any other medical insurance premiums paid for the benefit of the child, minus other distributions (year-end or otherwise), times 20% divided by 24. The child support obligation also required that petitioner pay 20% of any other distributions whenever received.

At the hearing on the motion for modification, petitioner testified that, in August 1994, he became president of Diversity Food Processing in Petersburg, Virginia. Diversity Food Processing is a joint venture between Burger King Corporation, Hudson Foods and SBS Processing.  Diversity Food Processing is a start-up food processing company that supplies hamburger patties to Burger King. Petitioner owns 62% of the company.

Petitioner filed a petition to modify child support in November 1994. Thereafter, he filed an amended petition for modification of child support in which he alleged that there had been a substantial increase in his annual income and that the application of the percentage order of the judgment for dissolution of marriage would result in a child support payment that exceeded the needs of the child and that would create a windfall to respondent. His prayer for relief asked the trial court to modify the child support order and to enter a child 

support order in a stated sum in a reasonable amount for the support of Stephen II.

At the time of the parties' divorce, petitioner was employed as president of Rayburt Systems, Inc. (Rayburt), which was a subchapter S corporation that owned and operated Burger King restaurants in Chicago. He was a 50% shareholder of Rayburt. He also owned 50% of the shares of Rayburt Systems of Indiana (Rayburt Indiana), which was a subchapter S corporation that owned and operated Burger King restaurants in Indianapolis, Indiana. His partner in both companies was a man named Oliver Darton, who owned 50% of the shares of both Rayburt and Rayburt Indiana and was president of Rayburt Indiana. Petitioner drew a salary from Rayburt but not from Rayburt Indiana. His salary in 1992 and 1993 was $90,000.

Petitioner purchased his interest in Diversity Food Processing by selling his Rayburt and Rayburt Indiana interests. To purchase his interest in Diversity Food Processing, petitioner was required by his new partners to divest himself of his interest in his Burger King franchises and to borrow $1 million  to invest in the joint venture. He repaid the $1 million upon the sale of his interest in the Burger King restaurants. The Burger King restaurants owned by Rayburt Indiana and one individually owned restaurant in Chicago were sold in 1994. The gross sale proceeds were $1.9 million. These sales resulted in a capital gain to petitioner in the amount of $714,654. The three Burger King restaurants owned by Rayburt were sold in June 1995, but the corporation had not yet been dissolved. The combined gross sale proceeds of the Rayburt and Rayburt Indiana restaurants were approximately $3 million. Petitioner did not know the amount of the corporate liabilities at the time of sale and, therefore, could not testify as to the amount of the net sales proceeds. The sale proceeds of the Rayburt assets were deposited in the corporation's account at South Shore Bank. Petitioner expects to receive little or none of the net sale proceeds of Rayburt and estimates the taxes due in September 1995, resulting from the sale, to be between $300,000 and $350,000. 

Petitioner has an employment agreement with Diversity Food Processing that provides that his salary is $300,000 per year. The salary amount was set by petitioner, Burger King and Hudson Foods. The contract also provides for two potential bonuses, one of an unstated amount and one in the amount of $100,000, which is designated a "non-discretionary" bonus. Although the bonus is termed nondiscretionary, it will be paid only if certain objectives are met by the business. Petitioner's employment agreement states that in any fiscal year that the company achieves specific performance targets determined by the board and based on the company's annual budget and the two-year plan, the company shall pay to petitioner for such fiscal year, in addition to his salary, a bonus in the amount of $100,000. If the company does not reach a specific performance target, he will not get his bonus. The board makes the determination as to whether the objectives are being met and whether he will receive the bonus. The board of directors consists of petitioner, two representatives from Burger King, two representatives from Hudson Foods, plus five other members. Petitioner does not control the board in regard to issues of his compensation.

The company started production in the latter part of June 1995 and did not have revenue until July 1995. Based on the company's projections, various cash flow analysis and profit-and- loss statements, petitioner projects that the company will lose anywhere between $500,00 to over $1 million and that, given that loss, he did not believe that he would be receiving either bonus for 1995 from Diversity Food Processing. 

Petitioner receives his salary from Diversity Food Processing on a bimonthly basis. The gross salary for the bimonthly period is $12,500. He has a 401(k) deduction from each paycheck of $385; a FICA deduction of $181.25; federal withholding of $3,905.54; and state withholding of $362.20. His total deductions are $4,833.99. Therefore, his net pay is  $7,666.01 per pay period.

When petitioner resided in Chicago, Stephen II spent two days a week with his father.  During 1995, Stephen II spent his spring break, the month of August, and a week in June with his father in Virginia.  

In addition to child support payments, petitioner pays for his son's camp, lessons, and club dues.  He purchases educational bonds and takes his son on annual vacations.  Petitioner also maintains medical insurance for Stephen II and pays the mortgage on the condominium in which respondent and Stephen II reside.  The monthly mortgage payment is $794.  The condominium has various amenities, such as a 24-hour doorman, security, indoor parking, cleaners, dentist, bank, grocery store, swimming pool, tennis and racquetball courts, and a clubhouse. The parties and Stephen II resided in the condominium as a family prior to the divorce.

Since moving to Virginia, petitioner has purchased a $430,000 home.  He paid between $90,000 and $100,000 as a down payment on the home and the mortgage is $340,000.  Petitioner leases a Porsche and purchased a 1992 Mercedes automobile with a car allowance provided under his employment contract with Diversity Food Processing.

Respondent testified that she has an undergraduate degree from Indiana University and an MBA from the Kellogg School of Business at Northwestern University.  She is also a certified public accountant.  Respondent is vice president in the private banking department at LaSalle National Bank.  In 1994, her salary was $70,000 and she earned a total income of $74,513.  In 1995, respondent's base salary increased to $72,500 and she received a $3,000 bonus in February 1995.  Her total earned income in 1995 was $75,500.

 Respondent has a savings account at First Chicago Bank into which petitioner deposits his child support.  She deposits $1,000 per month into a savings account at LaSalle National Bank.  Respondent has a 401(k) plan at First Chicago in which she defers 6% of her gross salary each month.  Her 401(k) savings account has a total of $60,000.  Respondent also owns 324 shares of First Chicago stock valued at $58 per share with a total value of $18,800.

Respondent has no mortgage or car payment for her Volvo 240 D automobile.  She stated that monthly household expenses for Stephen II and herself are limited to the following:  condominium monthly assessment, $377 per month, which includes cable and an indoor parking space; electricity, $170 per month; telephone, $120 per month; cellular phone, $60 per month; maid service, $130 per month; gas, $80 per month and car insurance, $100 per month.  Respondent stated that her repair bills for her car are a couple of thousand dollars a year, which includes maintenance.  She estimates that she spends $5,200 per year on groceries and she and Stephen II eat out twice a week at $20 to $25 per week.  Vacation expenses for the two of them are $1,200 to $1,500 per year.  

Respondent also stated that Stephen II's individual expenses are:  dry cleaning, $20 per month; piano lessons, $100 per month, half of which petitioner pays; judo, $210 per year; basketball, $160 per year; football, $100 per year; Kumon math instructional program, $65 per month; public school fees, $100 per year; clothing expenses, $2,000 to $2,500 per year; hair cuts, $10 per cut; summer camp for one month, $100; out-of-pocket costs for medical and dental care, $100 per year; birthday party expenses, $500 per year; magazine subscriptions, $50 per year; books, $100 per year; birthday gifts for other people, $175 per year; entertainment expenses for videos, pizzas, etc. $20 per week; and Christmas presents for other people, $400 per year.

Respondent also testified that she believed that the condominium was getting too small for her and Stephen II, and she believed that Stephen II should be in a larger residence.  She also stated that she was not pleased with the education that Stephen II was receiving at LaSalle Language Academy, a magnet school, and would like him to attend a private school.

Following the hearing, the trial court, on September 22, 1995, issued its memorandum opinion.  The court found that petitioner's increase in income was a substantial change in circumstances and warranted modification of the child support agreement.  The court further found that a 20% support order would result in payment in excess of the needs of Stephen II and, therefore, was not appropriate.  The court balanced the needs of the child, petitioner's resources and needs, respondent's resources and needs, and the lifestyle the child would have had if the parents had not separated, and ordered petitioner to pay $2,000 per month for child support.  Respondent appeals.

We affirm. 

ANALYSIS

I 

Respondent first contends that the support provisions in the agreement, calling for petitioner to pay 20% of his net income to respondent or a certain sum, are valid and enforceable.  Petitioner argues that the child support order was void and unenforceable because it was based on a percentage.

Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) regulates child support orders:

"§ 505. ***  (a) ***

(1) The Court shall determine the minimum amount of support by using the following guidelines:

Number of Children Percent of Supporting Party's 

Net Income

  

1 20%

2 25%

3 32%

4 40%

5 45%

6 or more 50%

* * *

(5) If the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case.  
 The final order in all cases shall state the support level in dollar amounts
." (Emphasis added.) 750 ILCS 5/505(a)(1), (a)(5)(West 1992).

A first district, second division case, 
In re Marriage of Sheetz
, 254 Ill. App. 3d 695, 627 N.E.2d 154 (1993), interpreted section 505(a) as stating that orders that state child support as a percentage of income, rather than a dollar amount, violate the Act, exceed the court's jurisdiction, and are void.  See also 
In re Marriage of Ingram
, 259 Ill. App. 3d 685, 631 N.E.2d 386 (1994)(where the second district followed the 
Sheetz
 interpretation). 

Based on the above statutory provision and 
Sheetz
, petitioner argued at the hearing that the child support order was void because it was based on a percentage of income. However, recent
 Illinois appellate courts have declined to follow the 
Sheetz
 interpretation.  These cases have held that, although an order improperly designates child support as a percentage of the father's income rather than listing a dollar amount as required by statute, the order is not void for lack of jurisdiction.  See 
In re Marriage of Baggett
, 281 Ill. App. 3d 34, 666 N.E.2d 850 (1996)(a fifth district case); 
In re Marriage of Florence
, 260 Ill. App. 3d 116, 632 N.E.2d 681 (1994)(a fourth district case).  These courts reason that, although a judgment that provides a percentage rather than dollar amount may be erroneous, the legislature did not expressly direct that child support orders that do not set out the amount of support in dollar amounts are void.  
Florence
, 260 Ill. App. 3d at 121; 
In re Marriage of Scott
, 286 Ill. App. 3d 1056, 678 N.E.2d 1 (1996).  Also, in the first district case of 
In re Marriage of Liss
, 268 Ill. App. 3d 919, 645 N.E.2d 341 (1994), the court examined the legislative history of the Act and concluded that the order requiring the father to pay $100 per week in child support or 20% of his net income, whichever was greater, carried out the statutory goals of the Act.  
Liss
, 268 Ill. App. 3d at 920-23.

We agree with the jurisdictional view adopted in 
Florence
, 
Liss
, and 
Baggett
.  The Act does not by its terms prohibit the use of a percentage rate in a child support order.  In the instant case, the agreement stated that petitioner was to pay respondent $864 per month or 20% of his net income.  Although it may have been improper to include the percentage in the agreement, we note that the agreement also included a specific dollar amount.  Therefore, we affirm the trial court's finding that the agreement was not void.

Petitioner argues that, although the trial court found the provision to be valid, the agreement was, nevertheless modifiable.  We agree.  The parties to a dissolution settlement agreement may agree to make the maintenance provisions nonmodifiable.  
In re Marriage of Corkey
, 269 Ill. App. 3d, 392, 397, 645 N.E.2d 1384 (1995).  The intention to preclude modification must be expressly stated.  
Corkey
, 269 Ill. App. 3d at 397.  However, provisions pertaining to child support may not be made nonmodifiable.  750 ILCS 5/502(f)(West 1992); 
In re Marriage of Falat
, 201 Ill. App. 3d 320, 327, 559 N.E.2d 33 (1990).  Thus, in marriage dissolution proceedings, a court is not bound by the agreements between the parties providing for the support of children.  
Falat
, 201 Ill. App. 3d at 327.

In the instant case, the parties' marital settlement agreement provided:  "In the event of the failure of the Parties to agree on such calculation and determination of child support, either Party may petition the Court for such calculation."  Also, the parties' joint parenting agreement stated: "This Agreement may only be modified upon a written modification signed by both parties or upon Order of Court." Thus, notwithstanding the fact that the law is clear that child support is modifiable, the parties' agreements also allowed for modification for child support. 

II

Respondent contends that petitioner failed to show the requisite change of circumstances to warrant a modification of the agreement. Section 510(a) of the Act provides that a child support judgment can be modified only upon a showing of a "substantial change in circumstances."  750 ILCS 5/510(a)(West 1992).  The burden of demonstrating such a substantial change in circumstances is on the party seeking the relief.  
Deardeuff v. Deardeuff
, 149 Ill. App. 3d 406, 409, 500 N.E.2d 992 (1986). 

Petitioner argues that he met the burden necessary to warrant modification of the child support provision because his income increased substantially.  However, at oral argument, respondent urged this court to hold that only an adverse change in the noncustodial parent's circumstances is a "substantial change of circumstances" that would warrant modification under the Act.  We refuse to do so because we believe such a holding would go against public policy. The Act was intended to protect the rights of children to be supported by their parents in an amount commensurate with their income. 
In re Paternity of Perry
, 260 Ill. App. 3d 374, 382, 632 N.E.2d 286 (1994).  This would necessarily include a modification due to an increase in income. If a support order could be modified only due to adverse circumstances, a custodial parent would not be allowed to seek an increase in child support based on the noncustodial parent's increased income.  We do not believe that this is what the Act intended.   The law is clear that only some change in circumstances 
of any nature
 that would justify equitable action by the court in the best interests of the child is required.  
In re Marriage of Heil
, 233 Ill. App. 3d 888, 891, 599 N.E.2d 168 (1992). 

In the instant case, petitioner's income was $90,000 at the time of the divorce.  At the time of the petition for modification, the trial court found that petitioner's income had increased to $300,000.  Thus, petitioner's increase in income was a substantial change warranting modification of the child support agreement.

III

Respondent also contends that, even if petitioner met his burden of proving a substantial change in circumstances, the trial court abused its discretion in ordering petitioner to pay $2,000 per month instead of the $3,000-per-month obligation he would be required to pay under the agreement.  Petitioner argues that the trial court properly awarded $2,000 per month for child support where Stephen II's expenses were substantially less than $2,000 per month.  We note that respondent labels the $2,000-per-month child support a "diminishment" in the amount of the child support because the agreement provided that the petitioner would be obligated to pay a minimum of $3,000.  However, the amount awarded by the trial court is clearly an increase from the $864 per month that petitioner was initially ordered to pay. 

After the threshold question of whether a substantial change in circumstances has occurred is answered, then and only then may the court determine the amount of the increase in child support. 
Heil
, 233 Ill. App. 3d at 890.  In determining the amount of increase in child support, the court considers the same factors used in formulating the original amount.  
In re Marriage of Lambdin
, 245 Ill. App. 3d 797, 806, 613 N.E.2d 1381 (1993).  These factors include: (1) the financial resources of the child; (2) the financial resources of the custodial parent; (3) the standard of living the child would have enjoyed had the marriage not been dissolved; (4) the physical and emotional condition of the child and his educational needs; and (5) the financial resources and the needs of the noncustodial parent.  750 ILCS 5/505(a)(2)(West 1992); 
Lambdin
, 245 Ill. App. 3d at 806. A petition to modify child support must be decided on the facts of each case, and the decision rests within the sound discretion of the trial court.  
 Lambdin
, 245 Ill. App. 3d at 807. Such an abuse of discretion occurs only where no reasonable man would take the view adopted by the trial court.  
In re Marriage of Bush
, 191 Ill. App. 3d 249, 260, 547 N.E.2d 590 (1989).

As to the award of child support, section 505(a) of the Act (750 ILCS 5/505(a)(West 1992)) creates a rebuttable presumption that a specified percentage of a noncustodial parent's income represents an appropriate child support award.  
In re Marriage of Freesen
, 275 Ill. App. 3d 97, 105, 655 N.E.2d 1144 (1995).  As we stated earlier, section 505(a)(1) of the Act provides that, in the case of one child, the minimum amount of child support that the trial court should order is 20% of the noncustodial parent's net income.  750 ILCS 5/505(a)(1)(West 1992).   The trial court found that petitioner's net income was $15,332 per month. Thus, based on petitioner's monthly earnings, 20% of his net income is $3,066.40  Accordingly, the $2,000-per-month child support ordered by the trial court is actually below the statutory guidelines.

When determining whether to deviate from the statutory guidelines, a trial court's consideration of the factors set forth in section 505 of the Act is mandatory, not directory.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 347, 672 N.E.2d 57 (1996).  In addition, the trial court must make express findings when it orders child support that is below the statutory minimum.  
Charles
, 284 Ill. App. 3d at 347.

When dealing with above-average incomes, the specific facts of each case become more critical in determining whether the guidelines should be adhered to.  
In re Marriage of Scafuri
, 203 Ill. App. 3d 385, 561 N.E.2d 402 (1990). Where the individual incomes of both parents are more than sufficient to provide for the reasonable needs of the parties' children, the court is justified in setting a figure below the guideline amount.  
In re Marriage of Lee
, 246 Ill. App. 3d 628, 643, 615 N.E.2d 1314 (1993). In determining the child support obligation of a high-income parent, the court must balance competing concerns. 
Lee
, 246 Ill. App. 3d at 643.  On the one hand, child support awards are not intended to be windfalls. 
Lee
 246 Ill. App. 3d at 644.  On the other hand, the court must consider the standard of living the children would have enjoyed absent parental separation and dissolution. 
Lee
, 246 Ill. App. 3d at 643-44. Thus, child support is not to be based solely upon the shown needs of the child. 
Freesen
, 275 Ill. App. 3d at 105.

For example, in 
Bush
, both the custodial and noncustodial parents were physicians.  The custodial parent earned $7,200 per month and the noncustodial parent earned almost $25,000 per month.  Twenty percent of the noncustodial parent's income was approximately $30,000 per year. Therefore, the trial court ordered the noncustodial parent to pay into an irrevocable trust for the child an amount equal to 20% of his net monthly income less the cost of maintaining a life insurance policy to secure his child support obligation and $800 to be paid directly to the custodial spouse. The reviewing court found the use of the trust to be improper because it appeared to be an unlawful court-ordered inheritance.  However, the court also held that, where the individual incomes of both parents are more than sufficient to provide for the reasonable needs of the parties' children, taking into account the lifestyle the children would have had absent the dissolution, the trial court is justified in setting a figure below the guideline amount.  Thus, the court remanded the issue to the trial court for determination of a reasonable specific monthly support amount. 
Bush
, 191 Ill. App. 3d at 260-62.

Also, in 
Lee
, the appellate court upheld the trial court's decision ordering the respondent to pay child support in an amount below the statutory guidelines. Respondent's yearly income ranged from $235,222 to $326,387.  During the marriage, the child enjoyed an above-average standard of living, which included extensive travel and electronic equipment.  The child also required medical treatment for a respiratory disorder.  The petitioner earned less than $20,000 per year.  The court held that, based on the child's standard of living as well as petitioner's inability to support the child at the same standard of living, the trial court did not abuse its discretion in ordering the respondent to pay $3,000 per month for his 10-year-old son.  
Lee
, 246 Ill. App. 3d at 644.

In the case 
sub judice
, the trial court found:

"[a] 20% support order would result in payment of a minimum of $36,000 yearly which is in excess of the needs of this child and therefore not appropriate.  On the other hand, the current order for $864.00 monthly does not meet his needs or enable him to enjoy the standard of living he would have had the marriage not been dissolved.  Balancing the needs of the child, Petitioner's resources and needs, Respondent's resources [
sic
] and needs, and the lifestyle the child would have had if the parents had not separated, the court finds that an order for $2,000.00 per month is appropriate." 

We believe that the trial court properly weighed the relevant factors and did not abuse its discretion in awarding $2,000-per-month for child support.

However, respondent argues that she warranted a $3,000-per- month award because of Stephen II's increasing needs as he grows older, including the need to enroll him in a local private school and to relocate to a residence that is "less cramped than her 1,200-square-foot condominium."  Respondent also refers to the fact that she earns no more than a middle-class income with limited savings, some bank stock, and an individual retirement account, while petitioner earns at least $300,000 per year, has a $2 million savings account, resides in a four-bedroom, $400,000 home and drives a Mercedes Benz and a Porsche.

We acknowledge the fact that petitioner earns a disproportionately greater income than respondent.  Thus, it is only fair that he should bear the greater share of the costs of support. However, the responsibility for the support of a child is the joint obligation of the parents. 
In re Marriage of Rogliano
, 198 Ill. App. 3d 404, 413, 555 N.E.2d 1114 (1990). Unlike the custodial parent in 
Lee
, we believe respondent's income is sufficient to contribute to Stephen II's needs in order for him to live in the lifestyle he would have enjoyed had the parties not separated. 

Furthermore, the facts establish that, while Stephen II enjoys a very comfortable lifestyle, he is not accustomed to a lavish or extravagant lifestyle.  Respondent testified regarding expenses that are reasonably related to "lifestyle."  These expenses include, 
inter alia
, restaurants, clothes, sports, lessons, vacations, gifts, and entertainment.  The trial court awarded respondent over twice the amount of the original award.   Respondent argues that the trial court failed to mention food, clothing, parking, entertainment, gift, vacation, personal expenses, and the need to enroll Stephen II in a private school, as well as the need to move to a larger residence.  However, in the court's memorandum opinion, the court lists Stephen II's monthly living expenses and the court stated "[a]dditionally there are parking, entertainment, gift, vacation and food expenses and personal expenses for Respondent such as clothing."  It is true that as children become older, it is presumed that the their needs escalate along with the cost of living. 
Lambdin
, 245 Ill. App. 3d at 807. We agree with the trial court that Stephen II's shown needs and lifestyle to which he is accustomed can be adequately maintained on a total award of $2,000 per month. 

Finally, a determination of the proper amount of child support, and modification thereof, lies within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. 
In re Marriage of Partney
, 212 Ill. App. 3d 586, 590, 571 N.E.2d 266 (1991). Based on the evidence presented at trial, we do not believe the court abused its discretion in modifying Stephen's support obligation to $2000 per month.

For the reasons cited herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LEAVITT and CAHILL, JJ., concur.