*In re* MARRIAGE OF JORJA L. YAXLEY, n/k/a Jorja L. Wertich, Petitioner-Appellee, and THOMAS E. YAXLEY, Respondent-Appellant.

Fourth District   No. 4—93—0658

Argued January 25, 1994.—Opinion filed February 18, 1994.—Rehearing denied April 25, 1994.

John T. Phipps (argued), of John T. Phipps Law Offices, P.C., of Champaign, for appellant.

Arthur M. Lerner (argued), of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On October 31, 1985, the circuit court of Champaign County entered a decree dissolving the marriage of petitioner Jorja L. Wertich, then known as Jorja L. Yaxley (Jorja), and respondent Thomas E. Yaxley (Tom). Incorporated in the decree was an approved settlement requiring respondent to pay petitioner rehabilitative maintenance through periodic payments. On February 23, 1988, the court approved an agreement modifying the requirements for payment of child support and maintenance. On November 12, 1992, Tom filed a petition seeking an interpretation and modification of the existing decree and a refund for claimed past overpayments of maintenance. Jorja then filed a counterclaim seeking reimbursement for a claimed deficiency in the payments Tom had been making. After an evidentiary hearing, the court entered an order on June 24, 1993, denying Tom all the relief he requested and awarding Jorja $32,760 on her counterclaim covering monies owed up to December 31, 1991. Tom has appealed.

The significant portions of the agreed modification of Tom's maintenance obligation as set forth in the February 23, 1988, order state as follows:

"A. Maintenance for Jorja: Tom recognizes that he has a legal obligation of rehabilitative support imposed or incurred because of the parties' marital relationship and an obligation to support the parties' minor children. In discharge of these obligations, *Tom*

*shall make periodic payments as follows: As of June 1, 1987, payments to JORJA will be 30% of the net profits earned by TOM in connection with his practice as a public accountant and from any other personal services rendered by him.* However, payments in no event will be less than $1,400.00 per month. In order to maintain the percentage basis, when the amount based on profits exceeds the minimum payment of $1,400.00 per month, the excess amount above $1,400 shall be credited to TOM to cover amounts paid by him in excess of 30% of his net profits. Where there are no longer any excess payments to be credited to TOM, then the entire 30% of net profits shall be paid directly to JORJA. *Net income for this purpose will be determined based on the tax return prepared for TOM'S business or any other income from his personal services subject to the following adjustments to allowable expenses to determine net profits under this agreement.*

> (1) No expense related to Country Club dues shall be deducted nor more than 60% of any other club dues;

> (2) 60% of actual expenses for meals, entertainment, and automobile expenses (including depreciation) will be deductible; and

> (3) No expenses will be deductible for travel for professional development for TOM.

B. This amendment is made with the specific intent that all of the periodic payments made hereunder will be deductible by TOM, and includible by JORJA for income tax purposes pursuant to Section[s] 71 and 215 of the Internal Revenue Code.

C. This provision unless further amended shall commence and be effective with the payment otherwise due September 30, 1987, and relate back to payments made as of August 1, 1987[,] and payments shall be payable on or before the last day of each month through and including January 31, 1992. It is agreed that no amendment may be made to increase any benefit specifically for Jorja." (Emphasis added.)

The parties do not dispute that under the modified agreed order in regard to maintenance, Tom was required to pay Jorja 30% of his "net profits earned [by him] in connection with his practice as a public accountant and other personal service rendered by him" within the meaning of that order. Because of the statement in that order defining "net income," the circuit court determined Tom's net income by first finding the sum of the amounts shown on schedule C of each of Tom's Federal income tax returns for the years in question as "net profit or loss." The court then made additions because some of the expenses allowed in schedule C came within the categories of adjustments required under the agreement. In regard to the year 1987, the

court adjusted that amount by seven-twelfths because the new procedure for determining maintenance took effect June 1, 1987, and continued for the last seven months of that year. The court then compared the total sum reached with the amount actually paid and arrived at the figure of $28,760 as the amount of arrearages owed for maintenance. The court also found that Tom owed Jorja $4,000 on another matter. The propriety of that award is not disputed.

Tom asserts that the circuit court (1) erred in failing to deduct from Tom's gross income, payments shown on his Federal income tax returns for the various years as adjustments for (a) one-half of his self-employment tax, (b) his self-employment insurance deduction, and (c) his retirement plan deduction; and (2) erred in the manner in which it considered his "net income" for the last seven months of 1987. We hold that the circuit court did err in failing to make a deduction for one-half of Tom's self-employment tax and in computation of his "net income" from his business and professional services for the last seven months of 1987. Accordingly, we order deduction to be made to the judgment entered in favor of Jorja.

Some of the underlying facts bearing upon the dispute are not contested. Tom had been a certified public accountant (CPA) since 1970. At times pertinent prior to May 15, 1987, he was a partner in the accounting firm of McGladrey, Hendrickson and Pullen (Mc-Gladrey). On that date he left the partnership and, at the time of entering into the approved amended agreement, he was engaged in the practice of accounting as a sole proprietor. This practice continued up to the time of the order on appeal. Tom testified that an important reason for modifying the formula for his support payments was the change in his employment from a partnership to a sole proprietorship. Jorja did not dispute this.

Marriage settlement agreements which are incorporated into decrees are to be interpreted in the same manner as other contracts and should be construed in accordance with the language of the document when ambiguity does not prevent doing so. (*In re Marriage of Druss* (1992), 226 Ill. App. 3d 470, 475, 589 N.E.2d 874, 878.) The instant agreement makes clear that Tom's Federal income tax returns are the basis for determining his "net income" and that "net income" is that derived from "[his] business" or "any other personal service."

In regard to the deductions which could be taken from gross income in arriving at "net income," the circuit court ruled that only those deductions permitted by schedule C of the return could be taken. We do not agree. The agreement approved in the decree spoke of the "tax return prepared for Tom's business or any other income

from his personal services." We interpret that language to permit deduction for business expenses shown on the return even though not shown on section C.

Clearly, Tom's retirement plan adjustment did not concern money which was a cost of business. Rather, the deduction concerns a portion of his profits which he is permitted to deduct for tax purposes as an encouragement to save. Similarly, the self-employed health insurance deduction concerns money not spent to run his business but to provide health care for himself. This was an expense Tom would have had regardless of whether he was in business.

The question of whether Tom should have been permitted to use the one-half of his self-employment tax as a deduction in arriving at "net income" under the agreed order is a somewhat more difficult question. The tax is for the purpose of funding old-age survivors pensions and disability and hospital insurance (social security) and is based upon a percentage of the single employer's income from the business up to a certain amount. Payment of the tax places the employer in the same position for receiving social security benefits as would be the case if the employer was an employee.

An employer pays one-half of the tax for social security benefits for employees and the employee pays the other half of the tax. The employer deducts the portion of the tax he or she pays in determining taxable income but the employee receives no deduction from taxable income for the tax he or she pays. During the calendar year involved here, the adjustment from income for self-employment taxes appeared at various places of the Federal income tax forms but at least one-half of it was always subtracted from Tom's income in determining his adjusted gross income. The function of the self-employment tax in the context of Federal law and the format of Tom's tax returns indicates that one-half of Tom's payments for self-employment taxes should be deducted before determining business income and the other half should not.

Tom maintains that the provision in the agreement that the items of "net income" are "subject to the following adjustments to *allowable* expenses" (emphasis added) in determining "net profits" brings into play the rule of *expressio unius exclusio alterius*. Under that maxim, "[t]he expression in a contract of one or more things of a class implies the exclusion of all not expressed." (*Suga v. Suga* (1962), 35 Ill. App. 2d 355, 359, 182 N.E.2d 922, 924.) Tom asserts that the listing of the three listed "adjustments to *allowable* expenses" (emphasis added) set forth in the agreements precludes any other limitations upon deductions from gross income which may be imposed in determining Tom's income subject to maintenance for Jorja.

Tom fails to take into consideration the significance of the word "allowable" as it is used in the agreement. The agreement provides that the computation of Jorja's maintenance shall be based on Tom's Federal income tax returns. These returns set forth some deductions which are "allowable" in regard to Tom's business and furnishing of any personal services. These "allowable" deductions create the class upon which the doctrine of *expressio unius exclusio est alterius* could operate. That rule could prohibit any limitation upon those "allowable" deductions beyond the three listed types of deductions. That rule could not operate to determine which deductions come under the class of "allowable" deductions from business and personal service income under the format of the tax returns.

Clearly, the agreement did not intend for Tom to be able to take the varied deductions from "net income" set forth in section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1987, ch. 40, par. 505(a)(3).) However, Tom's Federal income tax returns for the years 1988 through 1991 showed that one-half of his payments for self-employment taxes were as follows:

| | |
|---|---|
| 1988 | $ 2,929.50 |
| 1989 | 3,125.00 |
| 1990 | 3,925.00 |
| 1991 | 4,521.00 |
| Total | $14,500.50 |

Thirty percent of that total sum is $4,350.15, which must be deducted from the amount of the award to Jorja. Tom paid no self-employment tax for 1987.

As we have indicated, we do not agree with the method used by the circuit court to determine the "net income" for Tom for the seven-month period of 1987. The schedule C to his Federal income tax return for that year showed he had a gross profit of $40,011 and deductions of $58,546. Tom testified that these items concerned his single proprietor accounting firm. Also shown on schedule C was "other income" of $101,904, which Tom described as his share of the McGladrey partnership income. Tom admitted that some of that sum was paid to him after June 1, 1987, but he could not remember how much was paid during that time. However, the evidence showed that $89,311 of the $101,904 was Tom's share of the McGladrey profits for the partnership tax year of February 1, 1986, through January 31, 1987, and the balance of $12,573 was for the period between February 1, 1987, and April 30, 1987. Tom testified that this entire income was required to be reported on his 1987 return.

The circuit court took the figure of $83,894 income as shown on

Tom's schedule C for 1987 and multiplied it by .30 to obtain a figure of $25,168, which would have been the amount of maintenance owed had the entire year been covered by the agreement. The court then concluded that $14,681 was the amount due for the seven-month period between June 1, 1987, and the end of the calendar year. The problem with this computation is that it assumes that the income was realized by Tom evenly throughout the year. No basis existed for that assumption.

Tom had the burden of proving that, pursuant to his petition, he was entitled to a refund. Jorja had the burden of proving, under her counterclaim, that she was entitled to further payments. We have determined that for the years 1988, 1989, 1990, and 1991 Jorja's proof must be upheld except for $4,350.15 of the sum awarded her. As to the year 1987, neither party has produced sufficient proof as to Tom's "net income" for the period of that year beginning on June 1. We agree with the court and Jorja that Tom's income paid as a portion of profits from McGladrey during the last seven months of that year would be subject to the 30% formula as it was income from "personal services" within the meaning of the agreed order. As neither party produced sufficient evidence to show what Tom's net income was during that period, neither is entitled to claim that any more or less than was paid for that partial month was due.

Tom paid Jorja $11,600 for the seven-month period of 1987. In reaching the order on appeal, the circuit court concluded that Tom should have paid $14,681, which was $3,081 more than Tom had paid. The award given Jorja was, thus, $3,081 greater than it should have been.

The award to Jorja must be reduced both by the foregoing $3,081 and also by the $4,350.15 by which Tom should have been permitted to reduce his "net income" because of self-employment taxes he had paid. Thus, the award to Jorja must be reduced to $25,328.85.

Accordingly, we affirm the portion of the order denying Tom's request for relief. We also affirm the portion of the order permitting Jorja to recover on her counterclaim, but we reduce the amount of the recovery to $25,328.85 and costs. We remand the cause to the circuit court of Champaign County with directions to enter judgment for Jorja in that amount.

Affirmed in part, judgment reduced in part, and cause remanded with directions.

COOK and LUND, JJ., concur.