*In re* MARRIAGE OF DEBI HELDEBRANDT, Petitioner, and JAMES RICHARD HELDEBRANDT, Respondent-Appellant (The Department of Public Aid, Intervenor-Appellee).

Fourth District    No. 4—98—0225

Argued October 21, 1998.—Opinion filed December 2, 1998.

Howard W. Feldman (argued) and Stanley N. Wasser, both of Feldman, Wasser, Draper & Benson, of Springfield, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Patrick W. Carlson (argued), Assistant Attorney General, of counsel), for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1997, respondent, James Heldebrandt, filed a motion to reduce or terminate his child support obligation because (1) two of his five children had reached the age of majority; and (2) his children had so vehemently and persistently resisted visitation with him that any semblance of his relationship with them no longer existed. In December 1997, the trial court conducted a hearing on James' motion and later denied it. James appeals, arguing only that the court abused its discretion by denying his motion. We affirm.

## I. BACKGROUND

James and Debi Heldebrandt were married in 1976. Michael Heldebrandt, the oldest of their five children, was born in 1977. Their youngest child, Cody, was born in 1985. In 1989, the trial court dissolved the couple's marriage and awarded custody of the children to Debi. James was granted visitation rights but did not see any of the children for a year or more after the divorce. According to James' testimony, a "big blow up" occurred between him and all of the children at the time of the divorce. He told Debi and the children that he did not want to see the children until he was "ready," but if the children felt they were "ready" sooner, they could call him. In 1991, James tried to initiate visitation, but the children resisted. James remarried early in 1992, and Debi remarried in the summer of the same year.

In May 1992, James filed a petition to modify visitation. At the June 1992 hearing on the petition, the children testified about James' behavior both before and after the divorce. Several of the children remembered him as having a bad temper, and they testified to specific incidents in which they experienced that temper firsthand. They recalled that James threw things at them, ripped a telephone out of the wall in a fit of anger, chased them with a knife and plastic baseball bats, disciplined Cody with a belt, and at various times made verbal threats of physical harm. The trial court ordered a psychological assessment of the children and James to determine an appropriate visitation arrangement. In early 1993, the court ordered supervised visitation with the two youngest children and telephone contact with all of them, with increased visitation dependent on James' successful completion of counseling.

James successfully appealed that ruling because the trial court denied him the opportunity to cross-examine the expert witness who conducted the psychological assessment. *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 956, 623 N.E.2d 780, 784 (1993). In May 1994, on remand, the trial court conducted another hearing at which Debi testified that since the previous court date, James had visited three times with three of the children, but he had not visited the other two at all. In June 1994, the court granted James supervised visits with two children at a time on alternating weekends and with all of the children (except Michael) on the Fourth of July and Labor Day holidays and alternating holidays thereafter. On the Fourth of July and Labor Day holidays in 1994, James attempted visitation, but the children refused to go with him. James and his children have not spoken to or seen each other since then.

In May 1995, the trial court modified James' child support order by reducing his payments to 40% of his income because of his financial difficulties.

In September 1997, James filed the instant motion to reduce or terminate his child support obligation. At that time, he had not seen or contacted his children in over three years. In January 1998, the trial court denied his motion. In February 1998, in response to James' motion to reconsider, the court reduced his child support obligation to 28% of his income in consideration of both parties' incomes and expenses. Later in February, the court modified the order again to reflect an additional reduction to 25% of James' income upon the emancipation of the parties' second child. This appeal followed.

## II. ANALYSIS

### A. Effect of Custodial Parent's Actions with Respect to Visitation

#### 1. *Standard of Review*
■ When reviewing a ruling on a motion to modify child support, this court will allow the trial court's factual findings to stand unless they are against the manifest weight of the evidence. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 342, 672 N.E.2d 57, 60 (1996). Further, modification of a child support order lies within the trial court's discretion, and we will not disturb its decision absent an abuse of discretion. *People ex rel. Hines v. Hines*, 236 Ill. App. 3d 739, 744, 602 N.E.2d 902, 906 (1992).

■ Under section 510 of the Illinois Marriage and Dissolution of Marriage Act (Act), a substantial change of circumstances is required to change an order for child support. 750 ILCS 5/510 (West 1996); *In*

*re Marriage of Singleteary,* 293 Ill. App. 3d 25, 34, 687 N.E.2d 1080, 1087 (1997). Because the judgment "is *res judicata* as to the facts which existed at the time it was entered but not as to facts arising thereafter, only new conditions warrant modification of a divorce decree." *Waggoner v. Waggoner,* 78 Ill. 2d 50, 55, 398 N.E.2d 5, 8 (1979).

## 2. *Respondent's Proposed Standard:*
### *No Visitation, No Support*

The thrust of James' argument is that he should be relieved of his obligation to support his children because (1) they have repeatedly refused to see him and have "abandoned" him; (2) Debi has not sufficiently encouraged the children to spend time with him; and (3) the children and Debi have established a new family unit that excludes him. In effect, James proposes a three-part "test," which would warrant the reduction or termination of child support when the following circumstances exist: (1) a continuous refusal by the children to visit and communicate with the noncustodial parent despite his reasonable efforts at visitation; (2) continuous and repeated expressions of hostility and resentment by the children toward the noncustodial parent; and (3) a lack of any meaningful effort on the part of the custodial parent to foster and encourage visitation after being instructed to do so by the trial court. James further suggests that trial courts should be required to make express findings of fact on these elements and provide a factual basis for rulings on such motions. We reject James' proposal.

Under Illinois law, both parents have an obligation to financially support their minor children. *Department of Public Aid ex rel. Jones v. Jones,* 295 Ill. App. 3d 383, 389, 692 N.E.2d 1313, 1317 (1998); see also *In re Marriage of Betts,* 155 Ill. App. 3d 85, 100, 507 N.E.2d 912, 922 (1987) (the duty of a parent, even a noncustodial one, to support his or her child arises out of the parent-child relationship).

Even though James acknowledges the duty of a noncustodial parent to support his children, he nonetheless contends that *Cooper v. Cooper,* 59 Ill. App. 3d 457, 375 N.E.2d 925 (1978), and *Weinert v. Weinert,* 105 Ill. App. 3d 56, 433 N.E.2d 1158 (1982), have paved the way for Illinois courts to reduce child support payments on the basis of a noncustodial parent's being deprived of his visitation rights. We are not persuaded.

In *Cooper,* a noncustodial father petitioned for a reduction in child support payments on several grounds. His petition contained examples of the custodial parent's use of the child in "psychological warfare" with the petitioner and further alleged that the custodial parent had

poisoned the child's mind against him. *Cooper*, 59 Ill. App. 3d at 459, 375 N.E.2d at 928. The trial court dismissed the petition for failure to state a claim upon which relief could be granted. *Cooper*, 59 Ill. App. 3d at 460-61, 375 N.E.2d at 929. The appellate court held that the petitioner was entitled to a hearing but declined to comment on petitioner's likelihood of success. *Cooper*, 59 Ill. App. 3d at 464, 375 N.E.2d at 931. The court explained that "[w]e simply acknowledge the novel possibility that defendant's obligation for child support could be terminated or suspended should he prove the extreme and unusual allegations of his petition." *Cooper*, 59 Ill. App. 3d at 464, 375 N.E.2d at 931. Nonetheless, in the next sentence, the court restated the well-settled law in Illinois that "a mere violation of visitation terms will not excuse the father's obligation to support his children." *Cooper*, 59 Ill. App. 3d at 464, 375 N.E.2d at 1160.

In *Weinert*, the appellate court reversed the trial court's dismissal of a noncustodial parent's petition to modify his support obligation. The appellate court held that the children's refusal to visit with their father, coupled with the possibility that the custodial parent actively interfered with the petitioner's visitation rights, may establish a substantial change in circumstance warranting modification of petitioner's obligation. *Weinert*, 105 Ill. App. 3d at 59, 433 N.E.2d at 1160.

In both *Cooper* and *Weinert*, the petitioner alleged active and extreme interference by the custodial parent. In contrast, James' motion did not allege that Debi had engaged in such egregious behavior. Instead, James simply alleged that, absent any fault on his part, "none of [his] minor children have exercised visitation with [him]," and, although he had sought and attempted visitation, he was unable to do so and the courts were ineffective in obtaining reasonable visitation.

Another difference between the present case and both *Cooper* and *Weinert* is that in those cases the trial court dismissed the petition to modify child support without conducting a hearing on the merits. In contrast, the trial court here conducted a hearing on James' motion at which the court heard testimony from each of James' children, his current wife, his sister-in-law (who had supervised visits between James and his children), Debi, a psychologist, and James himself.

Moreover, we view James' contention that interference on Debi's part can relieve him of his obligation to support his children as a stale argument. One of our sister districts recently faced a similar argument and wrote the following:

"As trial judges and attorneys who handle divorces can attest, the most popularly held belief and excuse of litigants concerning their obligation of child support is that it is not owed because visitation

has not occurred or has been denied. We will reiterate once more that visitation and child support are not dependent and both are for the benefit of the children. Section 509 of the Act specifically provides that visitation and child support are independent and '[i]f a party fails to comply with a provision of a judgment, order or injunction, the obligation of the other party to make payments for support or maintenance or to permit visitation is not suspended.' [750 ILCS 5/509 (West 1996).]" *In re Marriage of Avery*, 251 Ill. App. 3d 648, 654, 622 N.E.2d 1231, 1235 (1993).

We agree with the *Avery* court and reject James' contention that misconduct on Debi's part can relieve him of his support obligation. See *In re Marriage of Tatham*, 293 Ill. App. 3d 471, 482, 688 N.E.2d 864, 873 (1997) (it is well settled that a custodial parent's violation of visitation terms does not excuse a noncustodial parent from supporting his children).

To grant James' motion would have the effect of punishing his children for their apparent inability to forgive and forget his outbursts and absences during their childhoods. Authorizing a reduction in child support payments by noncustodial parents in James' position would put a premium on parental misbehavior toward—or neglect of—their children. Such a decision might be viewed by noncustodial parents who consider themselves burdened by child support payments as containing the following message: behave badly enough toward the children and maybe the courts will reduce or eliminate those payments. This is a message the courts must never send.

### 3. *Sufficiency of the Evidence*

James also contends that the trial court's findings were against the manifest weight of the evidence. Specifically, James claims that the trial court ignored those facts that support his contention that Debi's interference fueled the children's resistance to him. We disagree.

By James' own testimony, he abandoned his children for over a year immediately after the divorce. One could expect that to rebuild a relationship with one's children after an emotional "blow up" and prolonged separation would be a gradual and difficult undertaking. The evidence suggests that James' past behavior left one or more of the children distrustful and resistant. Perhaps, unfortunately for all concerned, James' response to their resistance was impatience followed by withdrawal. The trial court specifically found "consistent testimony elicited that [Debi] told the children to give [James] a chance to establish a relationship" but that the children refused to do so. The court further stated: "Whether this refusal was due to [James'] past actions, the siblings' negative remarks about [James], the children's experiences during visits, or some personality clashes, the

[c]ourt did not hear evidence showing that [Debi] was the cause." We have reviewed the record and we conclude that the evidence supports the trial court's finding that the breakdown in this relationship was due to James' own conduct and his children's responses to it, rather than any interference by Debi. Accordingly, we hold that the court's findings were not against the manifest weight of the evidence.

We also reject James' contention that the trial court improperly placed the burden upon him to prove Debi's conduct amounted to bad-faith interference with his relationship with the children. Limiting child support is a "drastic sanction" and the movant appropriately bears a "heavy burden of proof." *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 752, 690 N.E.2d 1052, 1056 (1998). James simply failed to meet it.

## B. Effect of Children's Opposition to or Disinterest in Visitation

■ James next contends that he should be relieved of his child support obligation because the children "abandoned" him. We disagree.

As noted by the intervenor, the Department of Public Aid, courts from other jurisdictions have rejected respondent's "abandonment-negates-duty-to-support" argument. See *Jaffee v. Jaffee*, 608 N.Y.S.2d 649, 202 A.D.2d 264 (1994) (adolescent son's refusal to see his father would not result in the termination of support obligations when the father made minimal effort to establish and maintain a relationship with the son); *Carroll v. Carroll*, 593 So. 2d 1131 (Fla. Dist. Ct. App. 1992) (support is not dependent on visitation rights); *Henshaw v. Henshaw*, 83 Mich. App. 68, 268 N.W.2d 289 (1978) (trial court correctly denied father's action to terminate support based on his 13-year-old daughter's refusal to visit him). See generally Annotation, *What Voluntary Acts of Child, Other Than Marriage or Entry into Military Service, Terminate Parent's Obligation to Support*, 55 A.L.R.5th 557, § 10(b), at 622-27 (1998). We agree with this line of authority.

## C. Effect of New Family Unit

■ Last, James argues that the establishment of a new family unit by the children and Debi should be grounds for reduction or termination of James' child support payments. He cites no cases to support this proposition and "[b]are contentions in the absence of argument or citation of authority do not merit consideration on appeal." *Obert v. Saville*, 253 Ill. App. 3d 677, 682, 624 N.E.2d 928, 931 (1993). Moreover, this contention appears to be nothing other than a reiteration of arguments we have already rejected.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and GARMAN, J., concur.