*In re* MARRIAGE OF DONNA L. MULRY, n/k/a Donna L. Bartlett, Petitioner-Appellee, and JAMES T. MULRY, Respondent-Appellant.

Fourth District    No. 4—99—0848

Argued May 17, 2000.—Opinion filed June 22, 2000.—Rehearing denied August 3, 2000.

COOK, P.J., dissenting.

Daniel C. Lanterman (argued), of Harvatin & Lanterman, P.C., of Springfield, for appellant.

Babette P. Salus (argued) and Eric M. Schwing, both of Schwing & Salus, P.C., of Springfield, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On July 17, 1986, the trial court entered a judgment dissolving the marriage of petitioner, Donna L. Mulry, now known as Donna L. Bartlett (Donna), and respondent, James T. Mulry (James). The judgment for divorce incorporated a separation agreement providing for the support of two daughters, one now deceased (Amanda). The surviving daughter, Brianne, attends the University of Missouri in Columbia, Missouri. On September 1, 1998, James filed a motion for clarification and/or modification of judgment. James sought to terminate his child support obligation, seeking clarification of the parties' separation agreement or, in the alternative, based upon a substantial change in circumstances. On August 10, 1999, the trial court denied the motion for clarification and/or modification. On September 9, 1999, James filed a motion to reconsider. On October 7, 1999, the trial court denied the motion. James appeals, arguing that (1) the trial court erred in its interpretation of the separation agreement, and (2) the trial court erred in refusing to modify his child support obligation. We affirm.

The separation agreement of July 17, 1986, provides, in pertinent part, as follows:

*"Article IV*
*Support of Children and Related Matters*

1. Except as otherwise provided herein, James shall pay to Donna as and for the support and maintenance of Amanda and Brianne, the sum of Eight Hundred Dollars ($800.00) per month \*\*\*.

\* \* \*

5. James' obligations for support \*\*\* shall continue until that chiid attains full emancipation as defined in Article VII of this Agreement.

\* \* \*

*Article VI*
*Education of Children and Other Related Matters*
\* \* \*

3. James shall pay eighty percent (80%) of the \*\*\* college \*\*\* expenses \*\*\*; Donna shall pay the remaining twenty percent (20%).
\*\*\*

*Article VII*
*Emancipation Event*

1. \*\*\* [T]he 'Emancipation Event' shall occur or be deemed to have occurred upon the earliest to happen of any of the following, at which time James' and Donna's obligations for each child as detailed in this Agreement shall terminate:

a. *** if the child is attending post-secondary education the child's graduation from *** college *** or reaching age 23, whichever shall first occur ***."

An order for support, entered June 8, 1992, modified the child support obligation to $1,200 per month for Amanda and Brianne.

An order for support, entered May 29, 1996, and following the death of James and Donna's oldest daughter, Amanda, modified the child support obligation to $960 per month for Brianne.

On April 24, 1998, Brianne turned 18 years old. She graduated from high school in June 1998 and enrolled at the University of Missouri in the fall of 1998.

On September 1, 1998, James filed a motion for clarification and/or modification of judgment. James sought to terminate his child support obligation, seeking clarification of the parties' separation agreement or, in the alternative, based upon a substantial change in circumstances, in that James had begun paying college expenses. On August 10, 1999, the trial court denied the motion for clarification and/or modification.

James argues that the trial court erred in its interpretation of the separation agreement, obligating him to pay for the support and maintenance of Brianne until emancipation, as defined in article VII of the agreement, and also to pay college expenses.

■ "Marriage settlement agreements which are incorporated into decrees are to be interpreted in the same manner as other contracts and should be construed in accordance with the language of the document when ambiguity does not prevent doing so." *In re Marriage of Yaxley*, 259 Ill. App. 3d 544, 547, 631 N.E.2d 252, 254 (1994). The interpretation of a contract is a question of law. *In re Marriage of Davis*, 286 Ill. App. 3d 1065, 1067, 678 N.E.2d 68, 70 (1997). Thus, a reviewing court may interpret the contract independently of the trial court's judgment. *Davis*, 286 Ill. App. 3d at 1067, 678 N.E.2d at 70.

■ The general rule is that the obligation of a parent to support a child terminates when the child reaches majority. *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199, 206, 536 N.E.2d 946, 951 (1989). However, section 510(d) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) specifically provides that "[u]nless otherwise agreed in writing or expressly provided in a judgment, provisions for the support of a child are terminated by emancipation of the child, except as otherwise provided herein." 750 ILCS 5/510(d) (West 1998). The legislative purpose behind the adoption of section 510(d) is to allow the parties to a dissolution proceeding to remain liable for the support of children beyond emancipation. *Finley v. Finley*, 81 Ill. 2d 317, 326, 410 N.E.2d 12, 16 (1980) (discussing then section

510(c), which was later redesignated section 510(d)). The record in the case at bar reveals that James expressly agreed to remain obligated to pay child support "until that child [(Brianne)] attains full emancipation as defined," "the child's graduation from *** college *** or reaching age 23, whichever shall first occur."

James argues that his obligation under article VI of the separation agreement, "Education of Children and Other Related Matters," is a form of child support and makes ambiguous his obligation under article IV, paragraph 5, "support of each child *** until *** emancipation."

■ Ambiguity exists where the language is reasonably susceptible to more than one meaning. Language is not rendered ambiguous simply because the parties do not agree on its meaning. *In re Marriage of Druss*, 226 Ill. App. 3d 470, 476, 589 N.E.2d 874, 879 (1992).

In this case, the language of the separation agreement is plain and unambiguous. Clearly, James has an obligation to provide for Brianne's educational expenses and a continuing obligation for child support until emancipation, as defined in the agreement.

James argues that college expenses are a form of child support; therefore, he fulfills his obligation to support Brianne, set forth in article IV, "Support of Children and Related Matters," by paying Brianne's college expenses. Although a provision in a dissolution judgment for the payment of a child's college expenses is a term in the nature of child support (*In re Marriage of Loffredi*, 232 Ill. App. 3d 709, 714, 597 N.E.2d 907, 911 (1992)), it does not foreclose one's obligation to provide additional means of support for the child. Section 510(d) contemplates a parent's obligation to pay support or educational expenses or both. The parties' separation agreement makes reference to James' "obligations for support" and his "obligations for each child."

James argues the application of *In re Marriage of Dieter*, 271 Ill. App. 3d 181, 648 N.E.2d 304 (1995). *Dieter* offers little guidance. In *Dieter*, the mother sought payment of college expenses but also alleged a failure to pay child support. The trial court entered an order determining, in part, that the parties believed that child support expired. No such belief is shared by the parties here.

James argues that the trial court, in effect, deletes critical terms of the separation agreement while adding others to clarify the language of the agreement. We disagree.

A court construes the settlement provisions within a dissolution judgment so as to give effect to the intention of the parties, and where the terms are unambiguous, the parties' intent is determined solely from the language of the instrument. *Druss*, 226 Ill. App. 3d at 475,

589 N.E.2d at 878. The parties' intent is determined from the instrument as a whole, and it is presumed that the parties inserted each provision deliberately and for a purpose. The terms and provisions of the instrument may not be construed in a manner that is contrary to or different from the plain and obvious meaning of the language. *Druss*, 226 Ill. App. 3d at 475, 589 N.E.2d at 878.

■ In this case, the terms of the separation agreement are unambiguous. Article IV of the agreement clearly indicates the parties' intent to continue support until full emancipation. Further, the agreement specifically defines emancipation as the child's graduation from college, or reaching age 23, whichever shall first occur.

We affirm the trial court's interpretation of the separation agreement, obligating James to continue payment of support under article IV of the agreement and payment of college expenses under article VI.

We next consider James' argument that the trial court erred in refusing to modify his support obligation under article IV of the agreement. The decision to grant or deny a motion to modify an award for child support lies within the sound discretion of the trial court, and this court will not disturb the trial court's decision on appeal absent an abuse of discretion. *In re Marriage of Heldebrandt*, 301 Ill. App. 3d 265, 267, 703 N.E.2d 939, 940-41 (1998).

James argues that payment of college expenses, as provided for in the separation agreement, article VI, created a substantial change in circumstances warranting termination of his child support obligation under article IV of the separation agreement.

Section 510(a) of the Dissolution Act provides that a child support judgment can be modified only upon a showing of "a substantial change in circumstances." 750 ILCS 5/510(a) (West 1998). The burden of demonstrating a substantial change in circumstances is on the party seeking the relief. *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 34, 687 N.E.2d 1080, 1087 (1997). "When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the children." *In re Marriage of Stockton*, 169 Ill. App. 3d 318, 325, 523 N.E.2d 573, 578 (1988). In this case, the parents' present circumstances are the same as contemplated when they entered into the separation agreement and the same as existed at the time of the last modification (May 29, 1996). James argues that his payment of college expenses creates a substantial change in circumstances, but the agreement entered into by James and Donna "freely and voluntarily" provided for this very occurrence. In addition, we note here that James' income has actually increased since the last modification of judgment. The trial court found no

substantial change to warrant modification of child support and we agree.

In *Stockton*, a "supplemental judgment" was entered following the dissolution of marriage. The "supplemental judgment" provided for custody and child support; however, no provision covered termination of child support or payment of college expenses. This court found that "the [trial] court was within its discretion in considering the actual costs of supporting a minor child and the expenses of a college education for an adult child as factors supporting its determination to set child support below the statutory guidelines." *Stockton*, 169 Ill. App. 3d at 327, 523 N.E.2d at 580. In this case, we have a separation agreement that provides for termination of child support, as well as payment of college expenses. *Stockton* does not apply. In addition, James' obligation for child support was already set below the statutory guidelines at the time of the last modification of judgment (May 29, 1996) and remains below the statutory guidelines.

The trial court determined James' net monthly income from employment as a family practice physician to be $7,812.61 per month. The trial court further reduced James' net income by deducting his obligation for Brianne's college expenses, $928.14 per month (see 750 ILCS 5/505(h) (West 1998)), resulting in a net income of $6,884.47 per month. The trial court applied the guidelines of section 505 and determined that, under the guidelines, child support would be set in the amount of $1,376.89 per month, an amount in excess of what James currently pays. Using this analysis, the trial court did not find a substantial change in circumstances warranting termination of James' child support obligation. We agree.

James argues that the provisions of the separation agreement create a windfall for Donna and Brianne. We disagree. "In determining the child support obligation of a high-income parent, the court must balance competing concerns." *Singleteary*, 293 Ill. App. 3d at 36, 687 N.E.2d at 1088. "On the one hand, child support awards are not intended to be windfalls. [Citation.] On the other hand, the court must consider the standard of living [a child] would have enjoyed absent parental separation and dissolution. [Citation.] Thus, child support is not to be based solely upon the shown needs of the child." *Singleteary*, 293 Ill. App. 3d at 36, 687 N.E.2d at 1088. We find no evidence that Donna and Brianne are enjoying the benefits of a "windfall" as a result of James' obligations under the separation agreement.

We affirm the trial court's denial of James' motion to modify.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

GARMAN, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent. I would reverse the decision of the trial court and remand for further consideration.

It is unusual for regular child support to continue, undiminished, after the commencement of a provision for college expenses, when those "college expenses" include room, board, and transportation. The majority gives two reasons for that unusual result here: (1) it is clearly required by the agreement of the parties, and (2) James was not paying enough child support anyway.

The language upon which the majority relies is that "James' obligations for support *** shall continue until that child attains full emancipation," defined as graduation from college or age 23, whichever occurs first. The majority acknowledges, however, that college expenses constitute "support." James will be paying for Brianne's "support" until emancipation by paying college expenses, even if he never pays another penny of regular child support to Donna. Nothing in the language of the agreement indicates that James is required to make double payments of both regular child support and college expenses. The majority's statement that the agreement "clearly indicates the parties' intent" (314 Ill. App. 3d at 760) for double payments is a mere *ipse dixit* (because we say so).

The parties estimate the college expenses to be $19,386. Brianne has a scholarship of $5,500, leaving $13,886 to be divided pursuant to the parties' agreement. James' share of college expenses, 80%, comes to $926 per month. If James pays both the regular child support of $960 per month plus his share of college expenses, he will pay $1,886 per month. James' monthly net income is $7,812, which would produce a figure of $1,562 if the child support guidelines (20%) were followed, prompting the majority to complain that James was not paying enough regular child support and has no basis to complain if he is now required to make a double payment.

The guidelines provide only an approximation of what reasonable child support should be, which may be high or low in a particular case. See *Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747, 754, 690 N.E.2d 1052, 1057-58 (1998) (utility of the statutory child support guidelines decreases as the incomes of the parties increase; child support payments are not intended to be windfalls to the chil-

dren); *In re Marriage of Kern*, 245 Ill. App. 3d 575, 579, 615 N.E.2d 402, 405 (1993) (following the statutory child support guidelines may produce an excessive amount of support where the noncustodian is a high-income earner or an insufficient amount of support where the noncustodian is a low-income earner). Was $960 a month a reasonable amount of child support in this case during the last few years? The fact that James had the ability to pay more is not particularly relevant. Child support requires a determination of reasonable needs as well as ability to pay. Other factors, such as Donna's assets and income, should be taken into account. Some parents who are able to enjoy a high standard of living in fact choose a frugal standard of living. We should give greater weight to the historical facts here than we do to the arbitrary figure of 20%. Brianne has been supported on $960 a month during the last few years, based on court findings that was a reasonable amount, and without any objection by Donna. Donna's expenses will be significantly reduced when Brianne goes away to college, but the majority chooses to continue regular child support at its full previous level. The majority's order requires James to pay the same expenses twice.

Even if the majority's argument is accepted that some special weight should be given to the 20% figure, that figure is only $1,562 a month, and James is required to pay $300 more than that under the court's order.

The parties did not intend that James pay something more than college expenses. The parties clearly intended that Donna pay a portion of the college expenses, 20%. One reason for requiring the custodian to pay a portion of such expenses is to prevent a situation where the custodian urges the child to select the most expensive college possible, with all expenses to be paid by the noncustodian. The majority's interpretation of the agreement renders meaningless the provision that Donna pay 20% of college expenses.