2024 IL App (2d) 220461-U
No. 2-22-0461
Order filed August 27, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| KERI L. SVEC, n/k/a Keri L. Jonas, | ) | of McHenry County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 16-DV-725 |
| | ) | |
| DONALD J. SVEC, | ) | Honorable |
| | ) | Jeffrey L. Hirsch, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court erred in modifying the parties' marital settlement agreement to reallocate child tax exemptions between the parties after the children allocated to petitioner for tax purposes reached age 18 and no longer qualified for the exemptions. Since it was contemplated in the MSA that the tax benefit to petitioner would expire first because she was allocated the two older children, there was no substantial change in circumstances warranting a modification of the MSA.

¶ 2   Respondent, Donald J. Svec, appeals a judgment that modified the marital settlement agreement (MSA) between himself and petitioner, Keri L. Svec, n/k/a Keri L. Jonas, by altering the original allocation of tax exemptions for their minor children. We reverse because the petitioner did not establish a substantial change in circumstances justifying the reallocation.

¶ 3                                I. BACKGROUND

¶ 4      On September 5, 2018, the trial court entered a judgment dissolving the parties' marriage. The judgment incorporated the MSA and a "Judgment of Allocation of Parental Responsibilities Incorporating Agreed Parenting Plan" (Parenting Plan). The Parenting Plan recited that four children were born to the marriage and still living (a fifth child was deceased): A.J.S., born in 2002; C.M.S., born in 2004; C.W.S., born in 2008; and K.E.S., born in 2010. All four were minors at the time of the dissolution judgment. Petitioner was given the majority of the parenting time for all four children.

¶ 5      The MSA recited that respondent had yearly gross income of $170,400 and that petitioner had a yearly gross and imputed income of $39,000. Respondent would pay monthly child support of $1932. The support would be reduced upon emancipation of a child, occurring when, among other events, the child reached 18 years of age or completed high school (whichever was later). Respondent would also pay monthly maintenance of $3654.67. For the initial eight years, $500 of the monthly maintenance payment would be used by respondent to reduce petitioner's debt obligations. Maintenance would terminate in May 2028 or earlier upon the occurrence of certain specified events.

¶ 6      Pertinent to this appeal, paragraph 15.6 of the MSA provided that, "[f]or the tax years 2018 and forward, [petitioner] shall have as exemptions *** A.J.S. [and] C.M.S." Paragraph 15.7 of the MSA provided that, "[f]or the tax years 2018 and forward, [respondent] shall have as exemptions *** C.W.S. [and] K.E.S."

¶ 7      The MSA also stated that the parties (1) fully understood their rights and obligations, (2) had ample opportunity to review the MSA with persons of their choosing, and (3) after carefully considering the MSA, believed it to be fair and reasonable. At the hearing on the

marriage dissolution, petitioner testified that she and her attorney had discussed the terms of the MSA. She considered the MSA fair and equitable, wished to be bound by it, and entered it freely and voluntarily.

¶ 8    For all postdissolution proceedings chronicled here, petitioner was *pro se* and respondent was represented by counsel. On June 24, 2021, respondent moved to modify child support because the parties' oldest child, A.J.S., had turned 18. On August 5, 2021, the trial court granted the motion. It reduced respondent's monthly support obligation to $1890, based on his yearly gross income of $202,000 and petitioner's yearly imputed income of $39,000 plus the maintenance payments.

¶ 9    On November 12, 2021, respondent moved to increase his parenting time. On April 8, 2022, he moved to modify child support because the parties' second oldest child, C.M.S., would graduate from high school in May 2022 and turn 18 on July 14, 2022.

¶ 10    On May 9, 2022, petitioner filed a motion to modify the MSA regarding the child tax exemptions allocated in paragraphs 15.6 and 15.7. Petitioner noted that the two children (A.J.S. and C.M.S.) allotted to her for tax purposes were now over 18, and thus, she could no longer claim them "for child credit/exemptions as of the 2022 tax year." Petitioner requested that the remaining two minor children (C.W.S. and K.E.S.) be reallocated for tax purposes so that each party would have one child to claim for a tax exemption.

¶ 11    On August 12, 2022, the trial court held a hearing on petitioner's motion to modify the MSA and respondent's motions to modify child support and increase his parenting time. Respondent's counsel recommended that petitioner proceed with her motion first because "[i]t's not necessarily related to the other matters [*i.e.*, child support and parenting time], which are kind of intertwined." The court advised petitioner that she "must solicit sufficient testimony or evidence

and argument why [her] motion should be granted." Petitioner testified that, because the two children allocated to her under the MSA no longer qualified for a tax exemption because of their ages, she requested that one of the minor children originally allocated to respondent now be allocated to her. When the court asked petitioner what had changed since the date of the dissolution judgment, petitioner responded simply that the two children allocated to her were now over 18 years old. When the court asked her if she had "anything else *** to testify to," she answered, "That's it."

¶ 12 On cross-examination, when asked if she could still claim a tax exemption for the two older children, petitioner answered that she could "[f]or certain things. It's not the same amount. You don't get the same credit for children over 18." Petitioner was then asked if she understood that, when she signed the MSA, it was to "go forward through the time where the oldest children [were over] the age of 18." Petitioner replied, "There was a lot that went on that day. Yes, I did understand that. That was four years ago when everyone was younger and there was a lot—." The trial court interjected and admonished petitioner to answer yes or no. She answered, "Yes." After cross-examination, the trial court asked if petitioner had any further testimony. She testified, "Well, when that was agreed upon four years ago, there was a lot going into the whole decree and what we signed. So the forward thinking as far as the older children wasn't something that I was focussed [*sic*] on." When the court asked petitioner again if any relevant circumstance besides the children's ages had changed since the MSA was signed, petitioner said no.

¶ 13 In argument on the motion, respondent contended that there had been no change upon which to base a modification, because the allocation of tax exemptions was an aspect of the parties' bargain. In response, the trial court commented that, under a recent amendment to section 510(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (see Pub. Act 102-823,

§ 5 (eff. May 13, 2022) (amending 750 ILCS 5/510(a)(1)), the fact that the MSA contemplated that the two older children would eventually not be claimable for tax exemptions would not be a bar to finding a substantial change of circumstances on that basis. "However," the court continued, "*** [it] [did not] have enough evidence at this point to determine how to reallocate" the two minor children for purposes of tax exemptions. The court believed that the tax exemption was "$2,000 a child," but the court "[did not] know what [it was] worth to [petitioner] because [it] [did not] have sufficient information at this point about [petitioner's] income," nor about respondent's. The court was "leaning towards denying" petitioner's motion but elected to reserve its ruling until it decided respondent's motions to modify support and increase parenting time, because "the payment of support, *** is a factor in considering how these dependency exemptions should be allocated." The court continued:

> "And parenting time sometimes is an issue, too, depending on how the parenting time shakes out in terms of the amount of time that each parent spends with the children because that, obviously, effects not just, perhaps, the support obligation, if we get to a certain number of overnights, but it effects [*sic*] everybody's expenditures for the caretaking of the children.
>
> All right. So I'm leaning towards denying [petitioner's motion], but I'm going to reserve to see if there's any further argument."

¶ 14 The trial court then heard evidence on respondent's motions. Respondent testified that he earned a gross income of $204,542 in 2021. Petitioner testified that her current gross income was $37,000. At the close of evidence, the court continued all three motions pending an *in camera* interview with the two youngest children.

¶ 15    At a September 12, 2022, hearing, the trial court ruled on the three pending motions. First, the court denied respondent's motion to increase parenting time. The court found no substantial change in circumstances and that "by everybody's account, *** the children are thriving under the existing schedule." Second, the court denied respondent's motion to modify child support, because respondent had relied solely on his "self-serving testimony about what he earned in 2021." Without sufficient evidence of respondent's income, the court could not say that there had been a substantial change in circumstances. Third, the court granted petitioner's motion to modify the MSA as to the child tax exemptions. Finding that the MSA "equally divided the children for tax purposes," the court concluded that the parties' "clear intent" was to "equally divide those tax benefits, if any.'" The court continued:

> "Therefore, since [petitioner] is the custodial parent, at least as far as the majority of parenting time and under the tax code, the Court will order her beginning with the 2022 tax year to sign and deliver to [respondent] a release of her right to claim the exemption as a dependent for [C.W.S] in each year so long as [respondent] is current in support obligation by the end of each calendar year, and then, [petitioner] will continue to have the right to claim [K.E.S.] as a qualifying defendant [*sic*]."

¶ 16    The trial court's written order on petitioner's motion stated in pertinent part:

> "The court finds that [petitioner] has shown there has been a substantial change in circumstances affecting the tax benefits intended by the parties under [the MSA]. Contemplation or foreseeability of future events shall not be considered as a factor or used as a defense in determining whether a substantial change in circumstances is shown.[1] It is

---

[1]Here, as it did at the motion hearing, the trial court referenced the language of the recent

clear the parties intended to equally allocate the number of children as qualifying dependents for exemptions and tax credits. Beginning with the 2022 tax year, [petitioner] shall sign and deliver to [respondent] a release [of] her right to claim [C.W.S.] as a dependent (IRS Form 8332), so long as [respondent] is current in payment of his child support obligations as of December 31st of each calendar year. As the custodial parent, [petitioner] shall have the right to claim [K.E.S.] as her qualifying dependent each year. [Petitioner's] petition to modify is granted accordingly."

¶ 17 On October 12, 2022, respondent filed (1) a motion to reopen the proofs and to reconsider the denial of his motion to modify child support and (2) a motion to reconsider the modification of the MSA to reallocate the remaining minor children for tax exemption purposes.

¶ 18 The trial court heard the motions on November 29, 2022. The court first granted the motion to reopen the proofs on the issue of modifying child support. Before receiving additional evidence, the court addressed the motion to reconsider the reallocation of child tax exemptions. While receiving arguments on that motion, the trial court asked respondent's counsel if he believed that the allocation of child tax exemptions was "tied to the payment of child support." Counsel did not believe the two issues were intertwined because the MSA did not so indicate. The court denied the motion to reconsider, reaffirming that "there was sufficient evidence to support the findings of a substantial change in circumstances, that being the number of children that were eligible for—to qualify as dependents." "[L]ooking at the [MSA] on its face, *** the equal allocation was supported by the language in the [MSA]."

---

amendment to section 510(a)(1) of the Act (see Pub. Act 102-823, § 5 (eff. May 13, 2022) (amending 750 ILCS 5/510(a)(1)).

¶ 19    The trial court then received additional evidence on whether to modify child support. Respondent testified that he expected to receive $207,500 in gross income for the year, including salary and a bonus. The court granted the motion to reconsider, finding a substantial change in circumstances given the parties' second oldest child (K.E.S.) had graduated from high school and turned 18. In its calculations, the court noted that petitioner's and respondent's monthly net incomes for calculating child support were $4808 and $10,430, respectively. The court calculated respondent's monthly support obligation as $1814.58, down from the $1890 as previously modified.

¶ 20    Respondent filed a timely appeal from the orders granting petitioner's motion to modify the MSA and denying his motion to reconsider.

¶ 21                                    II. ANALYSIS

¶ 22    On appeal, respondent contends that (1) petitioner failed to prove a substantial change in circumstances necessary to modify the MSA on the allocation of child tax exemptions and (2) petitioner failed to introduce any evidence of the parties' intent regarding the allocation of child tax exemptions.

¶ 23    We initially note that petitioner filed a *pro se* appellate brief, which respondent moved to strike for failure to comply with the briefing standards of Illinois Supreme Court Rule 341(eff. Oct. 1, 2020). We granted respondent's motion and struck petitioner's brief. Nonetheless, we proceed to the merits because the case is suitable for resolution without petitioner's input. See *First Capitol Mortgage Co. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 24    We begin with whether petitioner established a substantial change in circumstances warranting modification of the MSA. Respondent argues that the trial court wrongly determined that petitioner's loss of a tax benefit when the two older children reached age 18 was itself a

substantial change in circumstances that justified amending the MSA to split the remaining minor children between the parties for tax purposes.

¶ 25 The allocation of child tax exemptions is an element of child support, over which the trial court has considerable discretion. *In re Marriage of Watkins*, 2017 IL App (3d) 160645, ¶ 31; *In re Marriage of Fowler*, 197 Ill. App. 3d 95, 100 (1990). Parties may enter into a marital settlement agreement that addresses, *inter alia*, child support. See 750 ILCS 5/502(a) (West 2020). Such an agreement is modifiable on the issue of child support "upon a showing of a substantial change in circumstances." 750 ILCS 5/502(f) (West 2020). Section 510 of the Act (750 ILCS 5/510 (West 2020)) addresses modification in more depth. Under section 510(a)(1) of the Act (750 ILCS 5/510(a)(1) (West 2020)), child support terms may be modified "upon a showing of a substantial change of circumstances." As to child support,

> "[t]rial courts have wide latitude in considering whether a substantial change has occurred warranting modification and should consider not only the needs of the children and the financial status of the noncustodial parent, but also the needs and financial status of the custodial parent, the financial resources of the children, the standard of living the children would have enjoyed had the marriage continued, and the physical, emotional, and educational needs of the children. [Citation.]" *In re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 674 (2005).

The burden of showing a substantial change in circumstances to justify modifying child support is on the party seeking relief. *In re Marriage of Kern*, 245 Ill. App. 3d 575, 578 (1993). A finding of a substantial change in circumstances may not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 24. However, the trial court's ultimate ruling on a motion to modify child support is typically reviewed

for an abuse of discretion. *In re Marriage of Barboza Fisher*, 2018 IL App (2d) 170384, ¶ 23. An abuse of discretion occurs when, among other things, the trial court applies an improper legal standard. *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 36.

¶ 26 Although respondent does appear to recognize it, the trial court applied the wrong version of section 510(a)(1) in deciding whether petitioner established a substantial change in circumstances. The court applied the version of section 510(a)(1) that became effective on May 13, 2022 (see Pub. Act 102-823, § 5 (eff. May 13, 2022) (amending 750 ILCS 5/510(a)(1)). That version states in relevant part, with the new text emphasized:

"(a) *** An order for child support may be modified as follows:

(1) upon a showing of a substantial change in circumstances. *Contemplation or foreseeability of future events shall not be considered as a factor or used as a defense in determining whether a substantial change in circumstances is shown, unless the future event is expressly specified in the court's order or the agreement of the parties incorporated into a court order. The parties may expressly specify in the agreement incorporated into a court order or the court may expressly specify in the order that the occurrence of a specific future event is contemplated and will not constitute a substantial change in circumstances to warrant modification of the order*[.]" (Emphasis added.) 750 ILCS 5/510(a)(1) (West 2022).

¶ 27 The trial court believed that, under the emphasized language, the fact that the MSA contemplated that the minor children allocated to petitioner would eventually grow too old for her to claim them for tax exemptions was no bar to finding a substantial change of circumstances based on her losing those tax benefits. We need not determine whether the court properly construed the

emphasized language, because the court erred in assuming that the amended section 510(a)(1) governed here. Petitioner filed her motion to modify on May 9, 2022, several days before the amendment became effective. Section 801 (750 ILCS 5/801 (West 2020)) governs the applicability of the Act and its amendments. See *In re Marriage of Micheli*, 2022 IL App (2d) 200704-U, ¶¶ 50-51; *In re Marriage of Wig*, 2020 IL App (2d) 190929, ¶ 37. Subsection (c) of section 801of the Act (750 ILCS 5/801(c) (West 2020)) states that "this Act [or an amendment] applies to all proceedings commenced after its effective date for the modification of a judgment or order entered before the effective date of this Act [or an amendment]." Petitioner's proceeding to modify the dissolution judgment incorporating the MSA was commenced before the effective date of the amendment to section 510(a)(1). Therefore, the amended section 510(a)(1) did not apply to petitioner's motion to modify. See *In re Parentage of A.H.*, 2023 IL App (1st) 190572, ¶ 83 (under section 801(c), motion to modify child support would not be governed by amendments that became effective after motion was filed).

¶ 28 Before the amendment, section 510(a)(1) stated, "(a) *** An order for child support may be modified as follows: (1) upon a showing of a substantial change of circumstances[.]" 750 ILCS 5/510 (a)(1) (West 2020). There was no language about contemplated or foreseeable events. The amendment was meant as a corrective to preamendment decisions in which courts were "reluctant to find a 'substantial change in circumstances' where the trial court contemplated and expected the financial change at issue" (*In re Marriage of Reynard*, 378 Ill. App. 3d 997, 1005 (2008)). See 12 Ill. Prac., Family Law Practice and Forms § 510 (2024) (the amendments to section 510(a)(1) by Pub. Act 102-823, § 5 (eff. May 13, 2022)) "limit which future events the court may consider as contemplated or foreseen by the parties when determining if a substantial change in circumstances has been established"). Under preamendment case law, "when the parties have entered a marital

settlement agreement, *** a substantial change in circumstances will not be found when the parties' present circumstances were contemplated when they entered their agreement." *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 24. For instance, in *In re Marriage of Mulry*, 314 Ill. App. 3d 756, 760 (2000), the court held that the respondent could not claim that his payment of college expenses for the parties' child was a substantial change in circumstances warranting termination of child support where the parties' separation agreement required the respondent to pay support until the child was emancipated *and* to pay a share of the child's college expenses. "[T]he agreement entered into by [the parties] 'freely and voluntarily' provided for [the] very occurrence" that the respondent tried to cite as a change of circumstances. *In re Marriage of Mulry*, 314 Ill. App. 3d at 760.

¶ 29    Here, the question of which future events the parties contemplated in the MSA dovetails with the question of whether—as the trial court concluded and as respondent disputes on appeal— the parties intended that the child tax exemptions be reallocated to achieve equality once some of the children were no longer claimable for the exemption. We resolve these issues by examining the MSA's language.

¶ 30    A marital settlement agreement is construed as any other contract—the court must ascertain the parties' intent from the agreement's language. *Blum v. Koster*, 235 Ill. 2d 21, 33 (2009). If the words of the agreement are clear and unambiguous, they must be given their plain, ordinary, and popular meaning, but if the language is susceptible to more than one meaning, it is ambiguous. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). However, a contract is not rendered ambiguous merely because the parties disagree as to its meaning. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). The interpretation of a marital settlement agreement, as a legal question, is reviewed *de novo*. *Blum*, 235 Ill. 2d at 33.

¶ 31    Paragraph 15.6 of the MSA states that petitioner will claim tax exemptions for the two older children, while paragraph 15.7 states that respondent will claim tax exemptions for the two younger children.  Both paragraphs provide that the arrangement will apply "[f]or the tax years 2018 and forward."  Although the parties could foresee that petitioner, allocated the older children, would lose the tax exemptions first, the phrase "and forward" as it pertained to respondent was not modified or restricted in any way, let alone to allow for future reallocation to achieve "equality."  Thus, the MSA's plain and unambiguous language clearly reflects the parties' intent—that respondent was to receive the tax benefit for a longer period.  Contrary to the trial court's finding, the mere fact that the children were split between the parties for tax purposes does not mean that the parties intended to maintain equal tax benefits into the future.  The initial division was equal only in that each party was allocated two children; petitioner's tax benefits would expire sooner than respondent's (an imbalance presumably mitigated by other bargained-for aspects of the MSA).  Equality would have been better achieved if each party were given one of the older children and one of the younger children.  The parties did not do this.  We conclude that petitioner's loss of the tax exemptions was contemplated by the MSA and thus cannot be considered a change of circumstances, let alone a substantial one.

¶ 32    Even if we were to consider the lost exemptions a change of circumstances, we could not deem them a "substantial" change.  At the hearing on her motion to modify the MSA, petitioner testified simply that she had lost her tax exemptions for the two older children because they had reached 18.  She said no when the trial court asked if she had any other evidence to support her case.  On cross-examination, petitioner acknowledged that she still had a tax benefit from the two older children but that it was not "the same amount" and not "the same credit."  Twice before ruling on petitioner's motion, the trial court noted that it lacked enough financial information to

determine how the diminished tax benefits impacted petitioner. Regardless of that evidentiary shortfall, the trial court ultimately ruled for petitioner because the court was convinced that the MSA mandated equality in the distribution of tax benefits. As we have explained, the court erred in finding a change of circumstances based on events fully anticipated in the MSA. We hold alternatively that petitioner did not present adequate evidence on the financial impact of the lost exemptions. The court's observation that each exemption was $2000 did not suffice for petitioner's evidentiary burden, especially because she claimed to have retained some tax benefit but did not specify how much.

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we reverse the judgment of the circuit court of McHenry County.

¶ 35    Reversed.